**UNITED STATES of America, Plaintiff,**

v.

**MIDWEST LIVESTOCK PRODUCERS, COOPERATIVE, Defendant.**

Civ. A. No. 79–C–275.

United States District Court, E. D. Wisconsin.

July 18, 1980.

Joan F. Kessler, U. S. Atty. by Elizabeth Adelman, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff.

Robert J. Schwab, Stroud, Stroud, Willink, Thompson & Howard, Madison, Wis., for defendant.

**1002**

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action brought pursuant to 28 U.S.C. § 1345 for damages arising out of the alleged tortious conversion by the defendant Midwest Livestock Producers Cooperative of collateral belonging to the Farmers Home Administration under the terms of a chattel mortgage. The action is before the court on plaintiff's motion for summary judgment, which will be granted.

The uncontroverted affidavit filed January 30, 1980, of Henry Tolliver, Jr., who is the county supervisor for the Farmers Home Administration for Winnebago and Outagamie Counties, establishes that on January 23, 1974, the plaintiff made a $45,700 farm operating loan to one John R. Zehner which was secured by a security agreement prohibiting Zehner from selling any of his crops or farm animals without the plaintiff's prior consent and providing that in the event of such sale without consent Zehner would be considered to be in default on the loan. (See also exhibits B, C, and D to the amended complaint filed June 21, 1979.) The defendant's answers to plaintiff's interrogatories, filed with the plaintiff's motion for summary judgment on January 30, 1980, establish that the defendant in April, May, and September 1974 and February 1975 sold 15 calves, 9 cows, and 1 bull belonging to John R. Zehner for the total sum of $3,251.36. Plaintiff seeks to recover that amount, plus interest, from the defendant.

The defendant argues, first, that the sale of culled animals, meaning dry, diseased, or injured cattle, is standard practice for a herdsman and therefore the Farmers Home Administration's consent to Zehner's sale of the animals can be implied and Zehner was not in default under the security agreement. See the affidavit of Edwin Carley filed March 20, 1980. Second, defendant argues that on September 11, 1975, Zehner's debts were discharged in bankruptcy and therefore plaintiff is precluded from using this forum in an attempt to hold the debt at issue non-dischargeable.

The affidavit of Henry Tolliver, Jr., filed January 30, 1980, establishes in ¶ 7 that no agent, employee, or official of the Farmers Home Administration consented orally or in writing to Zehner's sale of the animals. His affidavit filed April 7, 1980, establishes that the Farmers Home Administration does not permit the sale of culled animals without prior authorization. The affidavits are uncontroverted and therefore, even granting that the sale of culled animals is standard practice for a herdsman, no issue of material fact exists with regard to the defendant's first allegation.

As for the second allegation, a discharge in bankruptcy does not result in extinguishment of debts, but merely frees the debtor from personal liability and provides him with a personal defense to debt collection actions. 1A Collier's on Bankruptcy ¶ 16.02 at 1523 (14th Ed. 1978); *In re Innis*, 140 F.2d 479 (7th Cir. 1944); *Wagner v. United States*, 573 F.2d 447, 453 (7th Cir. 1978); *United States v. Gallatin Livestock Auction, Inc.*, 448 F.Supp. 616 (W.D.Mo. 1978), aff'd 589 F.2d 353 (8th Cir. 1978). Consequently the liability of a third party on the debt is unaffected by the debtor's discharge.

The circuit courts of appeal are divided on the issue of whether an auctioneer's liability for the sale of livestock covered by a security agreement held by the federal government is determined under federal common law or state law. The majority of circuits hold that the rights of the United States under a chattel mortgage are a matter of federal common law, see, e. g., *United States v. Matthews*, 244 F.2d 626 (9th Cir. 1957); *United States v. Sommerville*, 324 F.2d 712 (3d Cir. 1964); *United States v. Carson*, 372 F.2d 429 (6th Cir. 1967); *Cassidy Commission Company v. United States*, 387 F.2d 875 (10th Cir. 1967); and all of those courts have concluded that an auctioneer is liable on a theory of tortious conversion for the full market value of livestock sold without the government's consent, even if the auctioneer lacked actual knowledge of the security interest. Compare *United States v. Gallatin Livestock*

*Auction, Inc.,* supra, and *United States v. Union Livestock Sales Company,* 298 F.2d 755 (4th Cir. 1962), holding that state law governs. The issue has not been decided by the Seventh Circuit. Even assuming, however, that Wisconsin law governs in this case, the Wisconsin law on an auctioneer's liability is the same as the federal common law rule. See § 409.503, Wis.Stats., and *Production Credit Association of Chippewa Falls v. Equity Coop Livestock Sales,* 82 Wis.2d 5, 8–9, 261 N.W.2d 127 (1978). Therefore, the defendant in this case is liable to the plaintiff for the full sum which defendant received from the sale of Zehner's livestock.

IT IS THEREFORE ORDERED that the plaintiff's motion for summary judgment is granted, and that the plaintiff recover from the defendant the sum of $3,251.36, plus interest as allowed by law.