Richard HOBL, Appellant,†

FARM CREDIT BANK OF SAINT PAUL, formerly
known as The Federal Land Bank of Saint Paul,
Plaintiff,†

v.

Donald LORD and Ida Lord, Defendants-
Respondents.††

Court of Appeals

*No. 89-1759. Oral argument May 14, 1990.—Decided June 5,
1990.*

(Also reported in 458 N.W.2d 536.)

†Petition to review granted.
††Petition to cross-review denied.

14

On behalf of the appellant, the cause was submitted on the briefs of and orally argued by *Raymond H. Scott* of *Nikolay, Jensen, Scott, Gamoke & Grunewald, S.C.* of Medford.

On behalf of defendants-respondents, the cause was submitted on the brief of *Terrence J. Byrne* and *George B. Goyke* of *Byrne Law Office* and orally argued by *Terrence J. Byrne* of Wausau.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J.   Richard Hobl, the successful bidder at the sheriff's sale, appeals an order in a real estate mortgage foreclosure action denying the motion for confirmation of the sheriff's sale and allowing Donald Lord, the bankrupt mortgagor,[1] to redeem his farm by paying

---

[1]Donald Lord's mother, Ida Lord, was also a mortgagor. However, after Farm Credit foreclosed, but before Donald moved for redemption, Ida passed away.

to the mortgagee, Farm Credit Bank of Saint Paul, the property's fair value rather than the amount of the pre-bankruptcy judgment. We hold that the term "judgment" in sec. 846.13, Stats., means that part of the mortgage foreclosure judgment that survives bankruptcy proceedings.[2] Consequently, because Lord's personal liability for his debt to Farm Credit was discharged in bankruptcy and Farm Credit's lien against the farm was "stripped down" to the value of the real estate under 11 U.S.C. sec. 506 (1979), the only part of the judgment that survived was an amount equal to the value of the real estate. Lord properly redeemed by paying this amount, and we thus affirm the order of the trial court.

Farm Credit foreclosed on Lord's farm mortgage and received a judgment in the amount of $127,959.59, which included the amount of the mortgaged debt plus interest, costs and attorney fees. Lord subsequently filed for bankruptcy under ch. 7 of the bankruptcy code. At the sheriff's sale of the farm, Hobl was the successful bidder in the amount of $50,000. Before the confirmation hearing, the bankruptcy court entered an order discharging Lord of all personal liability to Farm Credit. In Lord's adversary proceeding against Farm Credit under sec. 506, the bankruptcy court valued the real estate at $48,000.[3]

---

[2]Section 846.13 provides in part:

The mortgagor . . . may redeem the mortgaged premises at any time before the sale by paying . . . the amount of such judgment, interest thereon and costs, and any costs subsequent to such judgment, and any taxes paid by the plaintiff subsequent to the judgment upon the mortgaged premises, with interest thereon from the date of payment, at the same rate.

[3]Although the bankruptcy court valued the farm at $48,000, Lord concedes that the farm's fair value is $50,000.

At the confirmation hearing, Lord moved for redemption of the property in the amount of $50,000. Hobl does not argue that Lord's redemption is too late because it was made after the sheriff's sale. Hobl concedes that "sale" under sec. 846.13, Stats., means the confirmation of the sale. *See Gerhardt v. Ellis,* 134 Wis. 191, 196, 114 N.W. 495, 496 (1908) ("It is clear that the title does not pass until confirmation so as to vest the purchaser with the right of possession. And it is equally clear that the right of redemption is not barred until confirmation of the sale."). The trial court granted the motion, finding that the state redemption statute must give way to federal bankruptcy law as to the redemption price, thus Lord had the right to redeem in the amount of the property's value as determined by the high bid at the sheriff's sale. Hobl filed a motion in the trial court to intervene as a formal party to the action for the purpose of filing an appeal. The trial court denied the motion.

A preliminary issue is whether Hobl has standing to appeal the trial court's order. A person may not appeal a judgment or an order unless he or she is aggrieved by it. *See Ford Motor Credit Co. v. Mills,* 142 Wis. 2d 215, 217, 418 N.W.2d 14, 15 (Ct. App. 1987). A person is aggrieved if the judgment or the order bears directly and injuriously upon his or her interests. *Id.* A person may be an aggrieved party entitled to appeal a judgment or an order even though he or she is not a named party to the suit. *Id.* at 218, 418 N.W.2d at 15.

Lord argues that Hobl is not aggrieved because the only issue in the trial court was the redemption price and Hobl was not entitled to receive any portion of an increased redemption price. This argument ignores the fact that if the trial court improperly allowed Lord to

17

redeem at the stripped-down price, Hobl was improperly denied consideration and likely confirmation of his bid. Because we agree that Hobl was aggrieved, we hold that he has standing to bring this appeal.

We next turn to the bankruptcy proceeding's effect on Lord's redemption. Hobl argues that the bankruptcy judgment merely relieved Lord from all personal liability for the mortgage debt. He asserts that Farm Credit's lien against the farm in the amount of the total mortgage foreclosure judgment survived unaffected by the bankruptcy proceedings and thus Lord can only redeem by paying this total judgment amount as required by sec. 846.13, Stats. However, Lord initiated an adversarial proceeding in the bankruptcy court under sec. 506. That section provides in part:

> (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. . . .
>
> . . ..
> (d) *To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void . . ..* (Emphasis supplied.)[4]

Although courts are not in agreement concerning the effect of sec. 506,[5] the seventh circuit has stated that

---

[4]The legislative comment to sec. 506(d) provides: "[I]f a party in interest requests the court to determine and . . . disallow the claim secured by the lien . . . and the claim is not allowed, then *the lien is void to the extent that the claim is not allowed.*" (Emphasis supplied.)

[5]Hobl cites *In re Dewsnup,* 87 B.R. 676 (Bankr. D. Utah 1988), and *In re Shrum,* 98 B.R. 995 (Bankr. W.D. Okla. 1989),

"[t]he combined effect of these subsections is to 'strip down' a lien to the value of the security." *In re Lindsey,* 823 F.2d 189, 189-90 (7th Cir. 1987). In *Lindsey,* farmers owned real estate subject to a first mortgage of $209,000 and a second mortgage of $341,000. They filed for bankruptcy under ch. 7, and the farmers asked the bankruptcy court to strip down the mortgages under sec. 506. The bankruptcy court found the current value of the real estate to be $233,000 so that all of the first mortgage but only $24,000 of the second was secured. The seventh circuit stated that:

> [O]nce the stripdowns were complete and the secured claims allowed in their stripped-down amount . . . the only thing that remained to do in the bankruptcy proceeding was to discharge the debtors and let the creditors foreclose their stripped-down liens, subject to whatever rights of redemption the debtors might have, under state law, in the foreclosure proceedings.

*Id.* at 191.

Hobl argues that *Lindsey* cannot be cited as authority for a ch. 7 debtor to accomplish redemption at a stripped-down value. It is true that this was not the issue in *Lindsey.*[6] However, we choose to follow *Lindsey*'s interpretation of sec. 506 and conclude that Farm Credit's lien against the farm was reduced to fair value. Lord argues that this conclusion results in a conflict between sec. 506 and the redemption provisions of sec.

for the proposition that sec. 506 is not available to a ch. 7 debtor for the purpose of voiding a lien to the extent that it is not an allowed secured claim.

[6]The issue in *Lindsey* was whether the ch. 7 debtors, after the stripdown, could then prevent the creditor from foreclosing the stripped-down lien. The seventh circuit held that they could not.

846.13, Stats., and that the bankruptcy provision preempts the state statute.

Our interpretation of sec. 846.13, Stats., avoids the conflict. We must harmonize the federal bankruptcy provision with sec. 846.13 if possible. *See State v. Burkman,* 96 Wis. 2d 630, 642, 292 N.W.2d 641, 647 (1980) (state statutes harmonized). Bankruptcy and redemption statutes are remedial in nature and, as such, are to be liberally construed in favor of the debtor. *See State Central Credit Union v. Bigus,* 101 Wis. 2d 237, 241, 304 N.W.2d 148, 150 (Ct. App. 1981) (bankruptcy); *Skach v. Sykora,* 127 N.E.2d 453, 457 (Ill. 1955) (redemption).

Construction of a statute and its application to a particular set of facts is a question of law. *State v. Mattson,* 140 Wis. 2d 24, 27-28, 409 N.W.2d 138, 140 (Ct. App. 1987). The primary purpose of statutory construction is to ascertain the legislative intent and give effect to that intent. *County of Columbia v. Bylewski,* 94 Wis. 2d 153, 164, 288 N.W.2d 129, 137 (1980). Even where a statute appears unambiguous on its face, it can be rendered ambiguous by its interaction with and relation to other statutes. *State v. White,* 97 Wis. 2d 193, 198, 295 N.W.2d 346, 348 (1980).

Section 846.13, Stats., gives Lord the right to redeem his farm for the amount of the judgment.[7] A judgment on foreclosure is a judicial determination of the amount of the mortgagee's lien. *See Marshall & Ilsley Bank v. Greene,* 227 Wis. 155, 164, 278 N.W. 425, 429 (1938). Although the circuit court found the amount of the lien to be almost $128,000, the bankruptcy court

---

[7]Lord has agreed to pay outstanding real estate taxes and does not claim the bankruptcy eliminated that obligation.

reduced the lien to present value. In the language of sec. 506(d), the amount of the judgment in excess of the fair value was "void." Requiring Lord to redeem by paying the full foreclosure judgment would effectively nullify the bankruptcy court's actions. In order to give the bankruptcy court's stripdown the effect intended, we hold that "judgment" as used in sec. 846.13 means the amount of the judgment that survives bankruptcy proceedings.[8]

Hobl next argues that even if sec. 506 preempts sec. 846.13, Stats., in this case the bankruptcy court merely found the present value of the property to be $48,000 and took all other matters relating to Lord's redemption rights under advisement. He asserts that absent more from the bankruptcy court, the redemption requirement under sec. 846.13 must be followed.

Lord counters by arguing that under sec. 506, after the bankruptcy court determined the property's value, it need not have proceeded further because once it determined the value of the secured claim, the remaining unsecured balance was discharged. We agree that noth-

_____

[8]The dissent relies on *In re Hagberg*, 92 B.R. 809, 811 (Bankr. W.D. Wis. 1988), proclaiming that a ch. 7 discharge eliminates the debtor's *in personam* liability on a secured debt, while the *in rem* liability is unaffected. This general tenet cannot be disputed. *Hagberg*, however, did not discuss the effect of sec. 506(d) on *in rem* liability. Other bankruptcy courts that have discussed the issue have concluded that liens survive discharge only so long as they are not avoided during the bankruptcy proceedings. *See In re Cassi*, 24 B.R. 619, 624 (Bankr. N.D. Ind. 1982). Lord's motion in bankruptcy court to disallow the lien for all but the fair value of the property was effectively granted by the bankruptcy court and thus voided all of Farm Credit's lien except for the $48,000.

ing more is required under sec. 506 in order to effect its provisions. Section 506(d) states that the unsecured portion of the lien is void and provides for only two exceptions to this rule,[9] neither of which apply in the present case. Consequently, the lien was stripped down, and Lord properly redeemed by paying the stripped-down amount.

*By the Court.*—Order affirmed.

CANE, P.J. *(dissenting).* The majority holds that a postpetition bankruptcy debtor may, as a matter of Wisconsin law, redeem his mortgaged property by paying its fair value, rather than the amount of the judgment. I concur with that part of the decision that states that Richard Hobl has standing to bring this appeal. However, because the majority erroneously perceives a conflict between Wisconsin and federal bankruptcy law, and because they misconstrue *In re Lindsey,* 823 F.2d 189 (7th Cir. 1987), I dissent from the remainder of the opinion.

I agree with the analysis set forth in *In re Hagberg,* 92 B.R. 809, 811 (Bankr. W.D. Wis. 1988), where the court stated:

> It is now well settled that a chapter 7 discharge eliminates the debtor's *in personam* liability on a secured debt while the *in rem* liability of the property held as security is unaffected and may be enforced by the mortgagee postdischarge. *See In re Lindsey,*823

[9]Section 506(d) applies unless:

(1)   a party in interest has not requested that the court determine and allow or disallow such claim under section 502 of this title; or

(2)   such claim was disallowed only under section 502(e) of this title.

F.2d 189, 191 (7th Cir. 1987) . . . The discharge only protects the debtor from the entry of a deficiency judgment should the collateral be insufficient to satisfy the debt.

This general rule, that discharge from bankruptcy only affects personal liability, has long been the rule in Wisconsin's state courts; *see Charnesky v. Urban,* 245 Wis. 268, 273, 14 N.W.2d 161, 163 (1944), and federal courts, *see United States v. Midwest Livestock Prods. Coop.,* 493 F. Supp. 1001, 1002 (E.D. Wis. 1980); *Hagberg,* 92 B.R. at 811; *In re Geiger,* 12 B.R. 410, 411 (Bankr. E.D. Wis. 1981), as well as a recognized black letter law principle, *see* 9A Am. Jur. 2d *Bankruptcy* sec. 779, at 513 (1980).

The majority reads sec. 506(d) of the bankruptcy code, as interpreted in *Lindsey,* to require allowing Lord to redeem his property at fair value, that is, the stripped-down value of the lien.[1] I disagree. As stated in *Lindsey:*

> Section 506 gives [the mortgage holder] a secured interest that he can foreclose on equal to the market value of his interest, and makes him an unsecured creditor for the rest, which is all that a judgment creditor is anyway. . . .
>
> What the statute does for the debtor . . . is enable him to precipitate the foreclosure proceedings . . . in order to minimize the secured claims and thus

---

[1] The majority purports to follow the seventh circuit's interpretation of sec. 506(d), while acknowledging other federal courts have explicitly rejected the conclusion they derive from *Lindsey. See In re Shrum,* 98 B.R. 995, 1002 (Bankr. W.D. Okla. 1989); *In re Dewsnup,* 87 B.R. 676, 682–83 (Bankr. D. Utah 1988). I do not believe *Lindsey,* if followed, compels the result the majority reaches. However, if *Lindsey* did compel that result, I would choose to follow federal court decisions concluding that ch. 7 releases only the debtor's personal liability.

increase the amount available for the unsecured creditors.

*Id.* at 191. The court's conclusion in *Lindsey* is that sec. 506(d) is a device to allow debtors to bring mortgage holders into the bankruptcy proceeding, not to erase the traditional distinction between personal and *in rem* liability.[2] *Lindsey* explicitly states that redemption rights, if available, are subject to state law. *Id.* As an end result of the majority's decision, Lord's judgment is reduced from approximately $128,000 to $50,000, an outcome specifically decried in *Lindsey. Id.* As *Hagberg* states, *Lindsey* is consistent with the proposition that ch. 7 discharges only personal liability.

Once we reach the conclusion that sec. 506 discharges only personal liability, and therefore does not affect state redemption law, it would be absurd to construe sec. 846.13, Stats., in the manner urged by the majority. That statute provides: "The mortgagor . . . may redeem the mortgaged premises . . . by paying to the clerk of the court in which the judgment was rendered . . . the amount of such judgment . . .."

The statute clearly provides for payment of the amount of the judgment rendered in circuit court. This interpretation in no way discriminates against those discharged from bankruptcy. They have exactly the same rights at the foreclosure sale and upon redemption as any other individual, and no obligation to participate in either. The majority's conclusion rewrites Wisconsin's redemption statutes, a matter properly left to the legislature.

---

[2]In this case, the bankruptcy court merely found $48,000 to be the fair value of the property. Had Lord explicitly requested that the bankruptcy court disallow the lien and allow redemption at fair value, a different analysis would have to be followed.

Lord was not entitled under sec. 846.13, Stats., to redeem his property at its. fair value. Consequently, I would reverse and remand either for the payment by Lord of the full amount of the judgment, or confirmation of the sale to Hobl.