Richard HOBL, Appellant-Petitioner,

FARM CREDIT BANK OF SAINT PAUL, formerly
known as The Federal Land Bank of Saint Paul,
Plaintiff,

v.

Donald LORD and Ida Lord, Defendants-Respondents.

Supreme Court

*No. 89–1759. Argued April 24, 1991.—Decided June 5, 1991.*

(Also reported in 470 N.W.2d 265.)

For the appellant-petitioner there were briefs by *Raymond H. Scott, William A. Grunewald* and *Nikolay, Jensen, Scott, Gamoke & Grunewald, S.C.,* Medford and

oral argument by *Raymond H. Scott* and *William A. Grunewald.*

For the defendants-respondents there was a brief by *George B. Goyke, Terrence J. Byrne* and *Byrne Law Office,* Wausau and oral argument by *George B. Goyke.*

Amicus curiae brief was filed by *Donald B. Rintelman, Kenneth R. Nowakowski* and *Whyte & Hirschboeck, S.C.,* Milwaukee for Farm Credit Bank of St. Paul.

Amicus curiae brief was filed by *John E. Knight, James E. Bartzen* and *Boardman, Suhr, Curry & Field,* Madison for Wisconsin Bankers Association.

LOUIS J. CECI, J.   This case is before the court on a petition for review of a decision of the court of appeals, *Hobl v. Lord,* 157 Wis. 2d 13, 458 N.W.2d 536 (Ct. App. 1990). The majority of the court of appeals (Cane, P.J., dissenting) affirmed an order of the circuit court for Taylor County, Gary L. Carlson, Circuit Judge. The circuit court's order denied a motion for confirmation of a sheriff's sale brought by Farm Credit Bank of Saint Paul, formerly known as The Federal Land Bank of Saint Paul (Farm Credit), and granted a motion to permit redemption brought by Donald Lord (Lord).[1]

One issue is presented on this review: whether a mortgagor may redeem mortgaged property under sec. 846.13, Stats.,[2] for the "stripped-down"[3] value of the

---

[1]Donald Lord and Ida Lord (his mother) were both mortgagors with regard to the property in question. Ida Lord passed away after Farm Credit foreclosed on the mortgage and before Donald Lord moved the circuit court to permit redemption.

[2]Section 846.13, Stats., provides as follows:

**846.13   Redemption from and satisfaction of judgment.** The mortgagor, his heirs, personal representatives or assigns may redeem the mortgaged premises at any time before the sale by paying to the

mortgaged property as determined by a bankruptcy court under 11 U.S.C. sec. 506 (1988) [hereinafter sec. 506].[4] We hold that a mortgagor may not redeem mortgaged

> clerk of the court in which the judgment was rendered, or to the plaintiff, or any assignee thereof, the amount of such judgment, interest thereon and costs, and any costs subsequent to such judgment, and any taxes paid by the plaintiff subsequent to the judgment upon the mortgaged premises, with interest thereon from the date of payment, at the same rate. On payment to such clerk or on filing the receipt of the plaintiff or his assigns for such payment in the office of said clerk he shall thereupon discharge such judgment, and a certificate of such discharge, duly recorded in the office of the register of deeds, shall discharge such mortgage of record to the extent of the sum so paid.

[3]The "stripped-down" value of mortgaged property is the present value of the property as opposed to the amount of the lien against the property. The effect of sec. 506 in bankruptcy proceedings is to "strip down" a lien to the present value of the security when the amount of the lien exceeds the value of the security. (The security in the case at bar is the mortgaged property.) The creditor's claim then becomes an unsecured claim to the extent it exceeds the present value of the mortgaged property or other security. *Matter of Lindsey,* 823 F.2d 189, 189–90 (7th Cir. 1987).

[4]11 U.S.C. sec. 506 provides in relevant part as follows:

**[Sec.] 506. Determination of secured status**

(a)   An allowed claim of a creditor secured by a lien on property in which the [bankruptcy] estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value [the value of the bankruptcy estate's interest in the property] shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

. . .

(d)   To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

property under sec. 846.13 for its stripped-down value as determined under sec. 506. We further hold that a mortgagor may only redeem the mortgaged property under sec. 846.13 for the amount of the judgment entered in the foreclosure action.[5] Accordingly, we reverse the decision of the court of appeals and the order of the circuit court.

The facts relevant to this review are not in dispute. On December 23, 1987, the circuit court entered a judgment of foreclosure against Lord and in favor of The Federal Land Bank of Saint Paul (now Farm Credit) in the amount of $127,959.59.

Lord filed a Chapter 7 bankruptcy petition in the Bankruptcy Court for the Western District of Wisconsin (the bankruptcy court) on February 14, 1989. *In re: Donald Lord,* Case No. EU7-89-00332. In his bankruptcy proceeding, Lord initiated a separate adversarial action against Farm Credit seeking, *inter alia,* redemption of the mortgaged premises. *Donald Lord v. Farm Credit Bank of St. Paul a/k/a Federal Land Bank of St. Paul and Estate of Ida Lord,* Adversary No. 89-0062-7.

On April 25, 1989, the sheriff's sale was held pursuant to sec. 846.16, Stats. The record shows that Lord was present at the sheriff's sale but did not bid on the mortgaged property on the advice of his attorney. Richard

---

(1)  such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2)  such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

[5]In addition to the amount of the judgment entered in the foreclosure action, the mortgagor would also have to pay interest, costs, and taxes as required by sec. 846.13. The mortgagor could also obtain the mortgaged property by appearing at the sheriff's sale and making the highest bid. Section 846.10(2), Stats.

Hobl (Hobl) was the successful bidder with a bid of $50,000.00.

By order dated May 23, 1989, the bankruptcy court established the present value of the mortgaged property at $48,000.00[6] and took under advisement Lord's request for redemption.

On June 1, 1989, Farm Credit moved the circuit court for confirmation of the sheriff's sale. One day later, the bankruptcy court discharged Lord as a Chapter 7 debtor. The bankruptcy court never ruled on Lord's motion to permit redemption.

On June 14, 1989, Lord moved the circuit court to permit him to redeem the mortgaged property for $50,000.00, the stripped-down value of the mortgaged property per the bankruptcy court's May 23, 1989, order. The circuit court heard Farm Credit's motion to confirm the sheriff's sale and Lord's motion to permit redemption on June 14, 1989. By order entered July 18, 1989, the circuit court granted Lord's motion to permit redemption and denied Farm Credit's motion to confirm the sheriff's sale. In so ruling, the circuit court reasoned that, under the principle of federal supremacy, state redemption law must give way to federal bankruptcy law on the issue of the redemption price.

Hobl appealed from the circuit court's order.[7] Hobl argued that Lord cannot redeem the mortgaged property for its stripped-down value because the bankruptcy court's strip-down is subject to state redemption law, and sec. 846.13, Stats., requires a mortgagor to pay the

---

[6]Although the bankruptcy court valued the mortgaged property at $48,000.00, it is undisputed that the present value of the mortgaged property is $50,000.00.

[7]The court of appeals concluded that Hobl had standing to appeal the circuit court's order. *Hobl,* 157 Wis. 2d at 17–18. The issue of Hobl's standing is not before this court.

amount of the foreclosure judgment plus interest, costs, and taxes to redeem mortgaged property. Thus, Hobl further argued that the circuit court's conclusion conflicts with the plain language of sec. 846.13.

The court of appeals rejected Hobl's argument and held that a bankrupt mortgagor may redeem mortgaged property under sec. 846.13 for its stripped-down value as determined by the bankruptcy court. *Hobl,* 157 Wis. 2d at 16. The court of appeals reached this conclusion by harmonizing secs. 506 and 846.13. The court of appeals reasoned that, under the principles of statutory construction, it had to harmonize secs. 506 and 846.13 to avoid a conflict between sec. 506's provision that an under-secured lien[8] is void to the extent it is not secured and sec. 846.13's provision that a mortgagor must pay the amount of the foreclosure judgment.

The court of appeals concluded that if a bankrupt mortgagor has to pay the amount of the foreclosure judgment to redeem his mortgaged property, the bankruptcy court's strip-down of the lien to the value of the mortgaged property is nullified. In other words, the court of appeals reasoned that since the unsecured portion of the lien is void under sec. 506, it cannot be enforced in a state redemption proceeding by requiring the mortgagor to pay the amount of the foreclosure judgment when said judgment is for an amount that exceeds the stripped-down value of the mortgaged property.

Therefore, the court of appeals held that the judgment which a bankrupt mortgagor must pay to redeem his property under sec. 846.13 is that part of the mortgage foreclosure judgment which survives the bank-

---

[8]For purposes of this opinion, an under-secured lien is a lien for more than the value of the mortgaged property or other security.

ruptcy proceedings—the stripped-down value of the mortgaged property. *Hobl,* 157 Wis. 2d at 20–22.

Hobl petitioned this court for review of the decision of the court of appeals, which we granted.

■

Application of a statute to an undisputed set of facts is a question of law. *Kania v. Airborne Freight Corp.,* 99 Wis. 2d 746, 758, 300 N.W.2d 63 (1981). We review questions of law independently and without deference to the circuit court or the court of appeals. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984). Accordingly, we will review the issue raised in this case without deference to the lower courts' decisions.

The gravamen of the court of appeals decision is the following: the effect of sec. 506 is to allow a mortgagor to redeem the mortgaged property for its stripped-down value notwithstanding sec. 846.13's requirement that a mortgagor may only redeem mortgaged property for the amount of the foreclosure judgment plus interest, costs, and taxes. The court of appeals advanced only one rationale for its decision: "Requiring Lord to redeem by paying the full foreclosure judgment would effectively nullify the bankruptcy court's actions [stripping down the value of Farm Credit's lien to $50,000.00]." *Hobl,* 157 Wis. 2d at 21.

We disagree. Requiring Lord to redeem by paying the amount of the foreclosure judgment plus interest, costs, and taxes does not nullify the bankruptcy court's action of stripping down Farm Credit's lien, because sec. 506 does not create a right to redeem mortgaged property at its stripped-down value. *In re Dewsnup,* 908 F.2d 588, 592 (10th Cir. 1990) (holding that " 'it is obvious that Congress did not intend to permit a debtor to redeem his real property through the use of [sec.] 506(d)' " (quoting

*In re Maitland,* 61 Bankr. 130, 135 (Bankr. E.D. Va. 1986))), *cert. granted* 111 S. Ct. 949 (1991). Rather, the purpose of sec. 506 in cases such as the one at bar is to protect the debtor/mortgagor from personal liability for the amount of the mortgage in excess of the value of the mortgaged property in the form of a deficiency judgment. *Matter of Hagberg,* 92 Bankr. 809, 811 (Bankr. W.D. Wis. 1988).

This protection is accomplished by a three-step process. First, sec. 506(a) divides under-secured liens into secured and unsecured claims. Second, sec. 506(d) voids that portion of the lien which is unsecured. Third, the unsecured claim for the amount of the mortgage in excess of the stripped-down value of the mortgaged property is discharged when the debtor is discharged from the Chapter 7 proceedings.

Therefore, the creditor/mortgagee may foreclose on the mortgaged property but may not seek a deficiency judgment for the difference between the amount of the foreclosure judgment and the proceeds of the foreclosure sale, because sec. 506 has stripped down the amount of the lien to the value of the mortgaged property. *Matter of Lindsey,* 823 F.2d 189, 189–90 (7th Cir. 1987) (holding that "[t]he combined effect of these subsections [506(a) and 506(d)] is to 'strip down' a lien to the value of the security"). As the court explained in *Hagberg:*

> It is now well settled that a chapter 7 discharge eliminates the debtor's *in personam* liability on a secured debt while the *in rem* liability of the property held as security is unaffected and may be enforced by the mortgagee postdischarge . . . .. Thus, if the mortgage debt is in default prior to the chapter 7 filing, or goes into default subsequently, the chapter 7 discharge will not prevent foreclosure of the mortgage. The discharge *only* protects the debtor from the

entry of a deficiency judgment should the collateral be insufficient to satisfy the debt.

*Hagberg,* 92 Bankr. at 811 (emphasis added; citations omitted).

█

Requiring Lord to redeem by paying the full amount of the foreclosure judgment does not subject Lord to personal liability for the difference between the foreclosure judgment and the value of the mortgaged property in the form of a deficiency judgment. Accordingly, the court of appeals erred when it concluded that requiring Lord to redeem by paying the full amount of the foreclosure judgment nullifies the actions of the bankruptcy court.

Thus, the court of appeals also erred when it created a right to redeem mortgaged property for its stripped-down value out of sec. 506's protection against deficiency judgments. The authority cited by the court of appeals and by Lord before this court does not support the creation of such a right.

The court of appeals decision relies upon *Lindsey.* In *Lindsey,* the mortgaged property's stripped-down value was $233,000.00 and was subject to a first and second mortgage of $209,000.00 and $341,000.00, respectively. The bankrupt mortgagor sought the permission of the bankruptcy court to continue to make the monthly payments specified in the first mortgage and requested that the bankruptcy court establish a payment schedule for the stripped-down value of the second mortgage: $24,000.00. The bankruptcy court refused to grant the debtor's request, and the district court affirmed the decision of the bankruptcy court. *Lindsey,* 823 F.2d at 190.

The seventh circuit court of appeals affirmed the lower courts' decisions for two reasons which illustrate that *Lindsey* cannot be used to support the court of

appeals decision in the case at bar. Stated simply, the first rationale offered by the *Lindsey* court was the following: bankrupt mortgagors must look to state redemption law, not federal bankruptcy law, for relief from foreclosure proceedings. *Id.* at 191. As the court commented:

> So the liens were stripped down [by the bankruptcy court]. But once the stripdowns were complete and the secured claims allowed in their stripped-down amount, and given that only the two stripped-down creditors were in the picture (for they were senior, and there were not enough assets for junior creditors to get anything), the only thing that remained to do in the bankruptcy proceeding was to discharge the debtors and let the creditors foreclose their stripped-down liens, subject to whatever rights of redemption the debtors might have, *under state law,* in the foreclosure proceedings.

*Id.* (emphasis added). The *Lindsey* court's first rationale for its decision emphasizes a tenet of black-letter law: the right or equity of redemption for real estate is created and governed solely by state law. *See generally* Peeples, *The Proper Role of Section 506(d) in Chapter 7: Some Unavoidable Problems,* Annual Survey of Bankruptcy Law 227, 256–59 (W. Norton, Jr. ed. 1990) [hereinafter *Peeples*]. Accordingly, sec. 506 does not create or govern a bankrupt mortgagor's right of redemption.

The second rationale the *Lindsey* court offered for its decision was that "[i]t would be absurd to think that Chapter 7 could be used . . . just to reduce the amount due on a mortgage." *Lindsey,* 823 F.2d at 191. In the case at bar, Lord attempts to use Chapter 7 to do just that—reduce the amount due on his mortgage with Farm Credit from $127,000.00 to $50,000.00. While the bankrupt mortgagors sought a payment plan in *Lindsey* and Lord seeks redemption for the stripped-down value in

236

the instant case, the bankrupt mortgagor in *Lindsey* essentially sought the same result Lord attempts to achieve in the case at bar: using Chapter 7 to retain ownership of his encumbered property while reducing the amount of the encumbrance to the present value of the property.

The *Lindsey* court rejected this result because it would allow a mortgagor "in any period of depressed real estate values, when [the mortgagor's] liabilities exceeded his assets [to reduce his liabilities while retaining ownership of his property] simply by declaring bankruptcy." *Id.* Later, when real estate values rise, the mortgagor could then enjoy the increase in value free of the pre-bankruptcy mortgage. *Id.* Such a result would have the negative effect of encouraging mortgagors to declare bankruptcy even if they could survive financially while paying off their mortgage. If mortgagors acted in such a fashion, the banking system of this country could be devastated.

The foregoing analysis illustrates that *Lindsey* does not support the court of appeals decision. Lord cited to this court a number of cases to support the court of appeals decision. *See Gaglia v. First Federal Savings & Loan Ass'n,* 889 F.2d 1304 (3d Cir. 1989); *Matter of Folendore,* 862 F.2d 1537 (11th Cir. 1989); and *In re Zobenica,* 109 Bankr. 814 (Bankr. W.D. Tenn. 1990). None of the decisions Lord cited to this court support the court of appeals' conclusion that a bankrupt mortgagor may redeem property under sec. 506 for its stripped-down value.

In *Gaglia,* the bankrupt mortgagor, after receiving a Chapter 7 discharge, filed an adversarial action in bankruptcy court to void a second mortgage to the extent it was under-secured. The stripped-down value of the mortgaged property was $34,000.00 and was subject to

237

first and second mortgages in the amounts of $28,873.50 and more than $200,000.00, respectively. *Gaglia,* 889 F.2d at 1305.

The court voided the second mortgage to the extent it was not secured because the second mortgagee was no worse off with the voiding than with a foreclosure sale, given the fact that it was under-secured and the unsecured portion of its claim was dischargeable under sec. 506(d). *Id.* at 1308-09. However, the *Gaglia* court expressly rejected the result Lord seeks in the case at bar.

> *Section 506, however, is not a redemption provision . . ..* Even after lien avoidance [of the second mortgage to the extent it is not secured], the Gaglias [the debtors] will not own the [mortgaged] property unencumbered. They will still be subject to First Federal's [first] mortgage and the SBA's [the second mortgagee's] claim to the extent it is secured. If the Gaglias are delinquent on the first mortgage First Federal has the right to foreclose, even if they can satisfy the SBA's secured claim against the remaining equity.

*Id.* at 1310 (emphasis added; citation omitted).

Unlike the first mortgage in *Gaglia,* Farm Credit's mortgage is under-secured. Therefore, Lord argues that the voiding of Farm Credit's mortgage to the extent it is under-secured allows him to redeem the mortgaged property for its stripped-down value. Lord's argument ignores the express prohibition of *Gaglia* that "[s]ection 506 . . . is not a redemption provision," *id.,* and the purpose of sec. 506: to protect bankrupt mortgagors from personal liability in the form of deficiency judgments. *Hagberg,* 92 Bankr. at 811.

The material facts in *Folendore* were almost identical to the facts in *Gaglia.* The bankrupt mortgagors

238

sought to completely void a third mortgage because it was junior to mortgages that exceeded the value of the mortgaged property. *Folendore,* 862 F.2d at 1538. The court granted the bankrupt mortgagors' motion to void the third mortgage over the third mortgagor's objection that doing so would allow the bankrupt mortgagors to redeem the property. In response to that argument, the court commented:

> *Section 506(d) does not really 'redeem' the property of the debtor.* The Folendores' [the bankrupt mortgagors] only interest in the property is possession—the two banks [the first and second mortgagors] effectively own the property. While it is true that the Folendores might in the future pay off the [first and second] mortgages on the property, at this moment the banks could foreclose on the property and cut out the SBA [the third mortgagor] and the Folendores completely . . ..
>
> *. . . Section 506 does not give a debtor its property back [free of encumbrances] as some sort of windfall.*

*Id.* at 1540 (emphasis added).

Lord argues that if the Folendores could void a third mortgage, he can void Farm Credit's mortgage to the extent it is under-secured and redeem the property for its stripped-down value. Lord's position ignores the fact that the Folendores had to completely pay off the first and second mortgages to retain their property. Lord's position also ignores the express language of the *Folendore* court's decision that "[s]ection 506 does not really 'redeem' the property of the debtor" and that "[s]ection 506 does not give a debtor its property back [free of encumbrances] as some sort of windfall." *Id.* Lord seeks precisely what the *Folendore* court held he

239

cannot have: redemption of his property under sec. 506 and the return of his property free of encumbrances.

The facts of *Zobenica* are similar to the facts in *Gaglia* and *Folendore.* In *Zobenica,* the bankruptcy court determined that the value of the mortgaged property was $56,500.00. *Zobenica,* 109 Bankr. at 820. The first and second mortgages secured claims of $46,607.37 and $70,000.00, respectively. *Id.* at 815. The bankrupt mortgagors requested that the bankruptcy court void the second mortgage on their property to the extent it was under-secured and allow them to retain ownership of the mortgaged property by paying off the first mortgage in full and by paying the second mortgagee the difference between the balance due on the first mortgage and the stripped-down value of the mortgaged property. The bankruptcy court granted the bankrupt mortgagors' request. *Id.* at 821.

Lord argues that the bankruptcy court in *Zobenica* allowed the bankrupt mortgagors to, in effect, redeem the mortgaged property for its stripped-down value and that, therefore, we should allow him to redeem his mortgaged property for its stripped-down value of $50,000.00. We disagree.

The *Zobenica* court stated that "there is no Bankruptcy Code authorization for redemption of realty" but granted the bankrupt mortgagors' request because doing so "merely . . . [put] the parties in the position they would be under applicable state law on redemption [Tennessee statutes and common law]." *Id.* at 821. The court concluded that under Tennessee common law, the bankrupt mortgagors could redeem the mortgaged property by paying the full amount due on the first mortgage and by paying the second mortgagor the difference between the amount due on the first mortgage and the present value of the mortgaged property. *Id.*

In contrast, allowing Lord to redeem for the stripped-down value of the mortgaged property would not put the parties in the same position as they would be in under Wisconsin redemption law. Under sec. 846.13, Stats., a mortgagor may only redeem the mortgaged property for the full amount of the foreclosure judgment plus interest, costs, and taxes.

Moreover, under sec. 846.10(2), Stats., any party, including a mortgagee, may bid at the sheriff's sale. Allowing Lord to redeem the mortgaged property for its stripped-down value would deprive mortgagees of this valuable right.[9] In holding that a mortgagor cannot redeem mortgaged property for its stripped-down value under sec. 506, the *Dewsnup* court explained the significance of a mortgagee's right to bid at foreclosure sales.

> At [a foreclosure] sale, a senior lienholder could purchase the property and sell it at some later time in anticipation of a change in land values. If there were two or more claims or mortgages, the junior lienholder could purchase the property, pay the senior lienholder, then inventory the property for later sale in hope of decreasing the amount of loss. In today's real estate market, these are very real considerations. Allowing [a mortgagor to redeem mortgaged property for its stripped-down value] denies creditors these options.

---

[9]We recognize that the mortgagee in the case at bar, Farm Credit, did not exercise its right to bid at the sheriff's sale. However, when this court decides a case, we not only adjudicate the rights of the parties to the case, but also set precedent for all similarly situated parties in the future. Accordingly, we must consider the effect of allowing Lord to redeem the mortgaged property for its stripped-down value on mortgagees' rights under sec. 846.10.

*Dewsnup,* 908 F.2d at 593. Moreover, as previously discussed, allowing a mortgagor who redeemed mortgaged property for its stripped-down value to enjoy any later increase in value of the mortgaged property free of the pre-bankruptcy mortgage would encourage mortgagors to file bankruptcy and thereby harm the banking system.

In addition to citing the previously discussed cases, Lord makes two arguments to support the court of appeals decision. First, denying him the right to redeem the mortgaged property deprives him of the "fresh start" provided by his Chapter 7 discharge. Second, allowing him to redeem the mortgaged property for its stripped-down value does not work a bad result because similar results are produced under Chapters 11, 12, and 13 of the bankruptcy code.[10] We disagree.

Liquidating Lord's encumbered assets, to wit, the mortgaged property, is not inconsistent with Chapter 7's "fresh start." The basic premise underlying Chapter 7 is the liquidation of assets in exchange for the discharge of debts. As the court observed in *Lindsey,*

> Chapter 7 of the Bankruptcy Code . . . contemplates the liquidation of the bankrupt estate. The real estate is the only asset of the estate; liquidation of the estate means sale of the real estate. Nothing in section 506 suggests the contrary. If the Lindseys [the bankrupt mortgagors] wanted to hold on to their property they should have sought reorganization under Chapter 13. In a reorganization, secured creditors may be prevented from foreclosing; may be

---

[10]We do not address Lord's arguments concerning secs. 806.07(1)(e), 806.19(4) and 846.14, Stats., for two reasons. First, the arguments were raised for the first time on appeal. *Wirth v. Ehly,* 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980). Second, none of the procedures provided by these sections were initiated by Lord in the proceedings below.

> forced to substitute a new security interest for their original interest; may experience, in short, the terrors of 'cram down' . . .. There is no cram down in a liquidation. Liquidation is liquidation.

*Lindsey,* 823 F.2d at 191. In short, the price of a Chapter 7 discharge is liquidation. Accordingly, denying Lord the right to redeem the mortgaged property for its stripped-down value does not deprive him of his "fresh start." Rather, it denies him a windfall.

Furthermore, while a mortgagor may keep his mortgaged property and reduce the lien against it to its stripped-down value, under Chapters 11, 12, and 13 of the bankruptcy code, cases under those chapters are significantly different from Chapter 7 cases for two reasons. First, secured or unsecured creditors or the court may reject a reorganization plan under Chapters 11, 12, or 13 and force the debtor into a Chapter 7 liquidation. 11 U.S.C. secs. 1126, 1129, 1225, and 1325. Thus, unsecured creditors may, under some circumstances, insist on partial satisfaction of their claims under Chapters 11, 12, and 13. *Id.* They have no such right under Chapter 7.

Second, strip-downs are restricted and/or prohibited in many cases under Chapters 11 and 13. As the *Dewsnup* court observed:

> Pursuant to 11 U.S.C. [sec.] 1322(B)(2), a Chapter 13 plan may not modify the rights of secured claim holders where the claim is secured only by a security interest in real property which is the debtor's primary residence. Likewise, in 11 U.S.C. [sec.] 1111(b)(2), the Code allows creditors in a Chapter 11 case to make an election which would result in allowing a secured lien to remain on the property to the full extent of the original obligation.

*Dewsnup,* 908 F.2d at 592. Some courts have held that sec. 1322(b)(2) prevents a debtor from using a strip-down when the mortgaged property is the debtor's home. *Peeples* at 233.[11] The purpose of 11 U.S.C. sec. 1111(b)(2) [hereinafter sec. 1111] is to prevent a debtor from using

> bankruptcy as a means for writing down its mortgage debt to its appraised value [a strip-down], at a time of depressed real property values, redeem[ing] the property with a cash payment, and captur[ing] the antici-pated future appreciation in value for itself.

*Peeples* at 250.

Thus, sec. 1111 prohibits a debtor in a Chapter 11 bankruptcy from achieving the result Lord seeks in the case at bar. Given the differences between Chapter 7 and Chapters 11, 12, and 13, as well as the limitations on strip-downs which exist in Chapters 11 and 13, Lord cannot point to the existence of strip-downs in Chapters 11, 12, and 13 to support the court of appeals decision.

██

While the federal courts are split on the question of whether sec. 506 may be used to void liens to the extent that they are under-secured,[12] no federal or state author-ity exists to support the court of appeals' conclusion that sec. 506 has the effect of permitting a debtor to redeem property for its stripped-down value. Furthermore, every federal court which has considered the issue presented

---

[11]Due to the limitation Chapter 13 puts on strip-downs, as well as the general differences between Chapters 7 and 13, we are not persuaded by Chapter 13 cases cited to us by Lord. *See, e.g., In re Hougland,* 886 F.2d 1182 (9th Cir. 1989).

[12]*See Peeples* at 267–68 n.44 and cases cited therein; 3 *Collier on Bankruptcy,* par. 506.07 at 506–74 to 506–75 nn.23–26 (15th ed. 1991), and cases cited therein.

by the case at bar has rejected the court of appeals' conclusion that sec. 506 has the effect of permitting a debtor to redeem property for its stripped-down value. Moreover, the court of appeals' conclusion is contrary to public policy because it encourages mortgagors who can afford to pay their mortgages to file for bankruptcy in order to reduce their liabilities while retaining ownership of their mortgaged property.[13] Accordingly, we conclude that the court of appeals erred when it held that Lord may redeem the mortgaged property for its stripped-down value.

*By the Court.*—The decision of the court of appeals is reversed.

JUSTICE WILLIAM A. BABLITCH withdrew from participation.

■■■

[13]Furthermore, the court of appeals decision violates public policy because it encourages Chapter 7 bankruptcies in contrast to the congressional preference for reorganizations. *Dewsnup,* 908 F.2d at 592.