M&I MARSHALL & ILSLEY BANK, Plaintiff-Respondent,

v.

KAZIM INVESTMENT, INC., and Neighborhood Improvement Development Corporation, Defendants,

RESNANT PROPERTIES LIMITED PARTNERSHIP, Appellant.

Court of Appeals

*No. 03–0404. Submitted on briefs December 2, 2003.— Decided December 23, 2003.*

2004 WI App 13

(Also reported in 678 N.W.2d 322.)

On behalf of the appellant, the cause was submitted on the briefs of *Christopher T. Hale* of *Hale & Wagner, S.C.*, of Milwaukee.

On behalf of the respondent, the cause was submitted on the brief of *Michael L. Sorgi* of *Sorgi Law Office, LLC*, of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

¶ 1. SCHUDSON, J. Resnant Properties Limited Partnership appeals from the circuit court order setting aside a sheriff's sale. Resnant argues that, under WIS. STAT. § 846.13 (2001–02),[1] the court had no authority to accept a "Plan of Redemption," rather than full payment for redemption, and that, in doing so, the court violated its right to confirmation of its purchase of the property at the sheriff's sale. Resnant is correct and, therefore, we reverse.

## I. BACKGROUND

¶ 2. The facts are undisputed. M&I Marshall & Ilsley Bank brought an action to foreclose on an apartment building that had become a public nuisance. On August 24, 2000, judgment of foreclosure was entered. At the sheriff's sale approximately two years later, Resnant, the owner of an adjacent property, was the successful bidder at $273,000. M&I properly applied for confirmation of the sale. *See* WIS. STAT. § 846.165.

¶ 3. At the confirmation hearing, Assistant City Attorney David Halbrooks, appearing on behalf of the City to offer information regarding the City's nuisance action, observed that Resnant was a "white knight" coming in to take over a problem property. In addition, three witnesses testifying on behalf of M&I, opined that Resnant's winning bid was for the property's "fair value." *See* WIS. STAT. § 846.165(2).[2] Nevertheless, M&I continued to negotiate the possible sale of the property. And M&I had considerable incentive to do so given that

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] WISCONSIN STAT. § 846.165(2) provides:

481

Resnant's purchase price of $273,000, if confirmed, would have left a deficiency of almost $400,000. Over Resnant's objections, the court granted several adjournments of the confirmation hearing.

¶ 4.   When the negotiations ripened to its satisfaction, M&I filed a motion to set aside the sheriff's sale. In its order granting the motion, the court stated that it was "satisfied that a Plan of Redemption has been executed and filed with the Court, which provides for a complete redemption of the foreclosure judgment, as set forth therein." That plan of redemption, however, did not provide for immediate full payment; instead, it established a plan for full payment of the negotiated price within six months.

## II. DISCUSSION

■

¶ 5.   Resnant argues that, under Wis. Stat. § 846.13, the circuit court had no authority to accept a plan of redemption that failed to provide for immediate, full payment. Resnant is correct.

■

¶ 6.   A court's interpretation of Wis. Stat. § 846.13 and its application of the statute to undisputed facts present a question of law subject to our *de novo* review. *See Hobl v. Lord*, 162 Wis. 2d 226, 233, 470 N.W.2d 265 (1991). The statute provides:

> In case the mortgaged premises sell for less than the amount due and to become due on the mortgage debt and costs of sale, there shall be no presumption that such premises sold for their fair value and no sale shall be confirmed and judgment for deficiency rendered, until the court is satisfied that the fair value of the premises sold has been credited on the mortgage debt, interest and costs.

**Redemption from and satisfaction of judgment.**
The mortgagor, the mortgagor's heirs, personal representatives or assigns *may redeem the mortgaged premises at any time before the sale by paying* to the clerk of the court in which the judgment was rendered, or to the plaintiff, or any assignee thereof, *the amount of such judgment, interest thereon and costs, and any costs subsequent to such judgment, and any taxes paid by the plaintiff subsequent to the judgment upon the mortgaged premises, with interest* thereon from the date of payment, at the same rate. On payment to such clerk or on filing the receipt of the plaintiff or the plaintiff's assigns for such payment in the office of said clerk the clerk shall thereupon discharge such judgment, and a certificate of such discharge, duly recorded in the office of the register of deeds, shall discharge such mortgage of record to the extent of the sum so paid.

WIS. STAT. § 846.13 (emphases added).

¶ 7.   Resnant argues that WIS. STAT. § 846.13 "does not allow a party to redeem a foreclosed property by hoping to be able to pay the judgment amount at a later date or promising to make such a payment." M&I responds that the agreement it reached after the sheriff's sale "called for payment *in full* of the indebtedness over a period not to exceed six months," and argues that the statute "does not preclude the compromise of such [debtor-creditor] entitlements."

¶ 8.   Relying on *GMAC Mortgage Corp. v. Gisvold*, 215 Wis. 2d 459, 572 N.W.2d 466 (1998), M&I supports its argument with three propositions:   (1) "[f]oreclosure proceedings are equitable in nature"; (2) a circuit court has "equitable authority to exercise discretion" throughout foreclosure proceedings; and (3) a circuit court's "equitable authority may not be limited absent a 'clear and valid' legislative command." *Id.* at 480. These propositions are solid. However, M&I's contention—

483

that the circuit court's "wide discretion" allowed for the approval of the agreement reached *after* the sheriff's sale—ignores the statute's clear and unambiguous requirement of full payment "before the sale." WIS. STAT. § 846.13.

¶ 9. "[C]ourts should not rewrite the clear language of [a] statute." *Wood v. City of Madison,* 2003 WI 24, ¶ 38, 260 Wis. 2d 71, 659 N.W.2d 31. Where a clear and unambiguous statute establishes a prerequisite to an act or judicial order, a court has no discretion to alter or eliminate that prerequisite. *See First Federated Sav. Bank v. McDonah,* 143 Wis. 2d 429, 434, 422 N.W.2d 113 (Ct. App. 1988) (equitable authority does not allow a court to ignore a statutory mandate). Here, clearly, the statute establishes full payment of "the amount" of the judgment (and all interest, costs and taxes) as a prerequisite to redemption. WIS. STAT. § 846.13. And, just as clearly, the statute requires that full payment be "before the sale." *Id.* Thus, with "a 'clear and valid' legislative command," the statute does indeed limit a circuit court's "equitable authority" in circumstances like those of this case. *See GMAC Mortgage Corp.,* 215 Wis. 2d at 480.

¶ 10. M&I's argument also ignores the supreme court's decision in *Hobl.* There, the supreme court decided "whether a mortgagor may redeem mortgaged property under sec. 846.13, Stats., for the 'stripped-down' value[3] of the mortgaged property as determined by a bankruptcy court." *Hobl,* 162 Wis. 2d at 228–29

---

[3] "The 'stripped-down' value of mortgaged property is the present value of the property as opposed to the amount of the lien against the property." *Hobl v. Lord,* 162 Wis. 2d 226, 229 n.3, 470 N.W.2d 265 (1991).

(footnotes omitted; footnote added). The supreme court held: (1) "a mortgagor may not redeem mortgaged property under sec. 846.13 for its stripped-down value," *id.* at 229–30; and (2) "a mortgagor may *only* redeem the mortgaged property under sec. 846.13 for the amount of the judgment entered in the foreclosure action," plus interest, costs and taxes (except that, of course, the mortgagor "could also obtain the mortgaged property by appearing at the sheriff's sale and making the highest bid"), *id.* at 230, 230 n.5 (emphasis added). And later in its opinion, the supreme court unequivocally reiterated, "Under sec. 846.13, Stats., a mortgagor may *only* redeem the mortgaged property for the *full amount* of the foreclosure judgment plus interest, costs, and taxes." *Id.* at 241 (emphases added).

¶ 11.  Understandably, Resnant relies heavily on *Hobl*. Remarkably, in response, M&I does not even mention it.[4] *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted argument deemed admitted).

---

[4] Instead, M&I relies on the continuing authority of circuit courts in foreclosure actions. Most pointedly, it invokes *Family Savings & Loan Ass'n v. Barkwood Landscaping Co.*, 93 Wis. 2d 190, 286 N.W.2d 581 (1980), in which the supreme court, quoting *Strong v. Catton*, 1 Wis. 408 (1853), reiterated that, in certain circumstances, a circuit court has discretion to set aside a sheriff's sale:

> "It must be conceded, that, until the report of the sale is confirmed, the whole matter is subject to the control of the court, and that a purchaser upon a sale upon foreclosure of a mortgage in chancery buys subject to the action of the court in confirming or setting aside the sale . . . . *And not only before, but after confirmation, from the nature and constitution of the court, it has a complete control over the parties to the cause and the subject matter, and may, in a case requiring its interposition, set aside a sale and divest any acquired rights of a purchaser . . . .*"

¶ 12. Judicial confirmation is "analogous to the execution of a judgment and simply enforce[s] the

---

*Family Sav. & Loan Ass'n*, 93 Wis. 2d at 202 (quoting *Strong*, 1 Wis. at 424) (emphasis added in *Family Savings*). While solid in isolation, these words dissolve in this case for two reasons.

First, *Family Savings* was decided more than a decade before *Hobl*; the words reiterating the long-settled doctrine of a circuit court's discretion to set aside a sheriff's sale are unremarkable and must be read together with *Hobl*'s clear statement of the statutory limitation on that discretion.

Second, in words immediately following the quoted passage, the supreme court added, " *'in doing which, however, it will take care that no injustice shall be done to any of the parties.'* " *Family Sav. & Loan Ass'n*, 93 Wis. 2d at 202 (quoting *Strong*, 1 Wis. at 424) (emphasis added in *Family Savings*). Here, setting aside the sale would do an injustice to Resnant, which, by making the winning bid, became a party to the action. *See GMAC Mortgage Corp. v. Gisvold*, 215 Wis. 2d 459, 482, 572 N.W.2d 466 (1998) ("Although the purchaser is not necessarily a party appearing in the foreclosure action for purposes of the judgment and sale, '[t]he purchaser at the sale is a party interested in the proceedings to confirm the sale.' ") (quoted source omitted).

M&I contends, however, that although Resnant had become what it calls a "quasi-party" to the action, its rights should not trump those of the original parties to resolve their dispute. They maintain that the rights of creditor and debtor were equitably protected by the circuit court's decision. We are not persuaded.

In the first place, the equities were, in effect, resolved by the legislature when it enacted WIS. STAT. § 846.13 requiring full payment before sale as a prerequisite to redemption. In the second place, while the *apparent* equities in the instant case may have been irresistible to the circuit court, the inequities inherent in any deviation from the statutory mandate must not

parties' rights which have been adjudicated." *Shuput v. Lauer*, 109 Wis. 2d 164, 173, 325 N.W.2d 321 (1982). Here, WIS. STAT. § 846.13 provides "a 'clear and valid' legislative command," *see GMAC Mortgage Corp.*, 215 Wis. 2d at 480 (quoted source omitted), removing a circuit court's discretion to alter the clear and unambiguous prerequisite of full payment for redemption before the sale. Accordingly, we reverse and remand the matter for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded with directions.

be forgotten. As Resnant argues, "If parties are allowed to redeem properties by ethereal plans filled with contingencies, no one will have any incentive to even bid at a foreclosure sale, thus harming both lenders and debtors." As Resnant also explains, bidders "may very well go through significant expense in preparing a bid (or deciding whether to make a bid)," all of which benefits creditors and debtors generally, and much of which would be deterred if bidders could not do so with confidence that their winning bids would be confirmed.