Byron vs. May.

*Collins & Smith*, for the appellee, argued that the bill set forth the matter with that degree of certainty which is required at common law. 1 Barb. Ch. Prac. 38. That the statement in the bill of the assignment of the mortgage was sufficient; that the statement in the bill that no proceedings at law had been had for the recovery of the mortgage debt was sufficient. *Patterson v. Powers*, 4 Paige, 549.

---

## BYRON v. MAY.

1. EQUITY—FORECLOSURE.—Where a mortgage contains a power of foreclosure, by advertisement under the statute, the mortgagee is not precluded thereby from maintaining a bill in equity for the foreclosure of it, the remedy provided by statute being cumulative merely.
2. SAME.—Courts of equity have inherent original jurisdiction of mortgage cases, which is recognized and regulated by the statute.

(2 *Chand.* 103.)

Byron vs. May.

APPEAL from the Circuit Court for *Rock* County.

The bill filed in this cause is for the foreclosure of a mortgage.

The defendant filed his plea, setting up that in the mortgage mentioned in the bill, among other things, it was covenanted and agreed that, in case of the non-payment of the sum of money mentioned in the mortgage, or any part thereof, at the time or times therein limited for the payment thereof, or in case of the non-payment of the taxes that might be assessed on the mortgaged premises, then and in either case the whole of the sum mentioned in the mortgage would be deemed payable, and that it should or might be lawful for the complainant, his heirs, executors, administrators or assigns, and the defendant did thereby covenant and agree, and by said mortgage did empower and authorize the complainant, his heirs, executors, administrators and assigns, to grant, bargain, sell, release and convey the premises in the mortgage and the bill described, with the appurtenances, at public auction or vendue, and on such sale to make and execute to the purchaser or purchasers, his heirs or their heirs and assigns forever, good, ample and sufficient deeds of conveyance in the law, pursuant to the statute in such case made and provided; and, that therefore this court has not jurisdiction of the matters alleged in the bill, because the complainant has a plain, adequate and complete remedy at law, under and by force of the statute in such case made and provided; therefore the defendant pleads the matter aforesaid, and prays the judgment of the court, etc.

The cause afterwards came on to be heard, and the plea of the defendant was overruled; the complainant's bill was taken as confessed by the defendant and the usual decree was made and entered, and the defendant appealed to this court.

*A. Hyatt Smith*, for appellant.

The circuit court derives its power to act as a court of chancery solely from the statute, and has no jurisdiction of any case in which a plain, adequate and complete remedy can be had

Byron vs. May.

at law; while courts of chancery, according to general equity principles, have jurisdiction to enforce remedies which cannot be enforced in courts of common law. Rev. Stat. ch. 84, § 1; 1 Story Eq. 27.

The statute furnishes a plain, adequate and complete remedy in the case of a mortgage containing a power of sale. Rev. Stat. ch. 121.

*J. A. Sleeper*, for appellee.

1. Courts of equity in this state are not ousted of their jurisdiction in cases of mortgage foreclosure, by the statute, which authorizes proceedings to foreclose by advertisement. Rev. Stat. ch. 84, §§ 1, 76–91; *Sailly v. Elmore*, 2 Paige, 497; *Charter v. Stevens*, 3 Denio, 33.

2. The statute authorizing foreclosure by advertisement is cumulative, and does not in terms repeal the common law; at all events, the statute authorizes the foreclosure of a mortgage, by bill filed in the circuit court. Rev. Stat. ch. 84, §§ 76–91.

3. The fact that a power of sale is contained in the mortgage, does not compel the mortgagee thus to proceed. He may still pursue his remedy in a court of equity. *Sailly v. Ellmore; Charter v. Stevens, supra. Burdick v. McVanner*, 2 Denio, 170; *Gordon v. Hobart*, 2 Sumn. C. C. 401; *Baker v. Biddle*, 1 Bald. C. C. 405; 3 Pet. 210, 215.

HUBBELL, J. There is but one question in this case— whether a court of chancery can properly entertain proceedings for the foreclosure of a mortgage containing the usual power of sale?

The appellant contends that the statute, providing for a forclosure by advertisement, furnishes " a plain, adequate and complete remedy; " and hence, chancery is excluded from jurisdiction.

This position cannot be admitted. Equity affords, in most cases, the best remedy, and in some, the only adequate relief,

as in cases of strict foreclosure. The power to decree and compel delivery of the mortgaged premises, and to decree and direct payment, by the mortgagor, of any balance of the mortgage debt which may remain unsatisfied is possessed alone by the courts of chancery, and is oftentimes essential to the rights of the mortgagee.

"It is not enough that there is a remedy at law; it must be plain and adequate, or, in other words, *as practical and efficient, to the ends of justice and its prompt administration, as the remedy in equity.*" *Boyce's Ex'rs v. Grundy*, 3 Pet. 215. This is undoubtedly the sound rule, and applying it to this case, there can be no question but that the remedy at law is not so perfect as to preclude the jurisdiction of chancery. It is a mistake, however, to suppose that the power of the court in foreclosure suits is conferred, or restricted, by the first section of chapter 84 of the statutes (p. 413), which provides, that "the circuit courts of the state shall have jurisdiction in cases properly cognizable by a court of chancery, in which a plain, adequate and complete remedy cannot be had at law." Such power is especially conferred by the subsequent sections (76 to 91 inclusive), which prescribe the proceedings "for the foreclosure or satisfaction of a mortgage," and authorize the court "to decree a sale of the mortgaged premises."

This grant of power is clear and specific, and is wholly independent of the question, whether there is a plain, adequate and complete remedy at law. It is equally independent of the statutory provision, authorizing a sale by advertisement, in pursuance of the power contained in the mortgage. That remedy is merely cumulative, and not in conflict with the jurisdiction of equity, also conferred by the statute.

But I wish to place this decision upon higher ground. The jurisdiction in question is not derived from the statute. Courts of equity have inherent original jurisdiction of mortgage cases, springing up from the enlightened principles of natural justice. It must be remembered that at common law,

a mortgage of real estate was an absolute conveyance of the land in fee simple, subject to be defeated only by the payment of the mortgage debt at the time and place specified ; and, in case of failure to pay, the land was lost or *dead* to the mortgagor. Co. Lit. 205*a*; 2 Black. Com. 157 ; 4 Kent, 131. And such is the law at this day with respect to mortgages of personal property, notwithstanding the usual power of sale therein. *Burdick v. McVanner*, 2 Denio, 170. To mitigate the extreme severity of this rule in relation to land, courts of chancery early interposed. They proceeded upon the principle of preventing oppression and injustice. And with this object, not only insisted upon the right of redemption, but treated with great jealousy all contracts made with the mortgagor to lessen, embarrass, or restrain it. The untrammeled minds of England's chancellors first broke through the mists of the common law upon this important branch of jurisprudence. And although Sir MATTHEW HALE "complained severely" of the growth of equities of redemption, the enlightened doctrines of NOTTINGHAM and HARDWICK, triumphed over technicalities, and finally extended themselves even to the courts of law. Chancellor KENT, upon this subject, speaks with more than his usual zeal and eloquence. "In ascending," says he, "to the view of a mortgage in the contemplation of a court of equity, we leave all these technical scruples and difficulties behind."

Not only the original severity of the common law, treating the mortgagor's interest as resting upon the exact performance of a condition, and holding the forfeiture or the breach of a condition to be absolute, by non-payment or tender at the day, is entirely relaxed ; but the narrow and precarious character of the mortgagor's rights at law is changed under the more enlarged and liberal jurisdiction of the courts of equity.

Their influence has reached the courts of law, and the case of mortgages is one of the most splendid instances in the

history of our jurisprudence of the triumph of equitable principles over technical rules, and of the homage which those principles have received, by their adoption in the courts of law.   Without any prophetic anticipation, we may now well say, that "returning justice lifts aloft her scale."   4 Kent's Com. 151.

Impressed with these grateful recollections, we should hesitate before adopting a principle which would expel courts of equity from a field in which they have accomplished so much good and won so much glory.   But the proposition of the appellant goes even further, and in effect excludes also courts of law ; tying up proceedings on foreclosure to a naked statutory provision, which in the end must be found as rigid and technical as the mortgage itself, in the eye of the ancient law. This is the first attempt, I think, by any mortgagor, to sever his connection with a court, which gave birth to all his rights, and which can alone certainly and effectually protect them. And if it should prove successful, we might expect to see the scale of " returning justice," speedily and fatally descending.

The power of sale inserted in the mortgage, authorizing its foreclosure by advertisement and public sale, although designed, perhaps, to lessen the expense and simplify the proceedings, is nevertheless a power wielded by the mortgagee.   It is one of the numberless contrivances by which the holders of securities have sought to evade or overthrow the right of redemption. Properly viewed—as a mere cumulative remedy—it may be found convenient in practice, and it neither excludes the jurisdiction, nor obviates the utility of a court of chancery.   The interposition of that court is still indispensable, on the part of the mortgagor, to protect the equity of redemption, to extend the time for sales, to open sales improperly made, and to decree a re-conveyance when the mortgage debt is paid ; and on the part of the mortgagee, to restrain waste, and to appoint a receiver of rents and profits, in case the property is not likely to pay the debt and costs.

Had there been in this state no special act conferring the jurisdiction in question, it must have sprung incidentally from the general powers conferred upon the circuit court by the constitution, the power to enforce the performance of contracts, to direct the execution of trusts, and to grant relief in cases of fraud and oppression. These powers are generic and inherent in courts of equity. They are inseparable from their existence, and are conferred by the constitution by the very act of their creation.

This court would be alike derelict to itself and to the people whose interests it has in charge, not to assert and vindicate this rightful portion of its jurisdiction.

In every view of this case the decree must be affirmed, with costs.