IN the MATTER OF the FORECLOSURE ACTION
IN RE LINCOLN STATE BANK V.
Christopher R. CARRILLO, et al.:

Edward A. OSTERBERG, Appellant,†

v.

LINCOLN STATE BANK, Christopher R. Carrillo,
Carrie A. Carrillo, Roomates, Ltd.
and Kathleen Mertz, Respondents.

Court of Appeals

*No. 2006AP68. Submitted on briefs September 7, 2006.
—Decided October 4, 2006.*

2006 WI App 237

(Also reported in 725 N.W.2d 634.)

† Petition to review denied 1/9/07.

On behalf of the appellant, the cause was submitted on the briefs of *Deanna N. Senske* of *Renee E. Mura, S.C.* of Kenosha.

On behalf of the respondent Lincoln State Bank, the cause was submitted on the brief of *M.J. Duginski* of *Krawczyk, Duginski & Rohr, S.C.* of New Berlin.

On behalf of the respondent Roomates, Ltd., the cause was submitted on the brief of *Robert R. Henzl*, *JoAnne Breese-Jaeck* and *Christopher A. Geary* of *Hostak, Henzl & Bichler, S.C.* of Racine.

On behalf of the respondent *Kathleen Mertz*, the cause was submitted on the brief of *Michael J. Lade* of Milwaukee.

Before Snyder, P.J., Brown and Nettesheim, JJ.

¶ 1. BROWN, J. Edward Osterberg appeals from an order vacating his purchase of foreclosed property.

Due to miscommunication between the seller, Lincoln State Bank, and its lawyer, the bank had proceeded with the confirmation hearing after the sale despite having received payment from the mortgagor. When the bank realized the error, it brought the matter to the circuit court, and the circuit court found that Roomates, Ltd., the owner of the property, had redeemed the mortgage. Osterberg appeals, claiming that because Roomates failed to notify the court of its payment, the redemption was invalid and his purchase should stand. We disagree, and uphold the circuit court's decision. Roomates complied with the redemption procedure and had no statutory obligation to give notice to the court. Because Roomates redeemed the mortgage before the sale's confirmation, it remains the property's owner.

¶ 2. The property at issue here is located in Waterford, Wisconsin. In 1997, the property's then owners, the Carrillos, took out a mortgage loan of $60,000 from Lincoln State Bank. That same year, the Carrillos sold the property to Roomates, Ltd., but the deed was not recorded until 2000 and Lincoln State Bank was not notified of the transfer. Roomates later entered into a land contract for the property with Kathleen Mertz. This transaction was not recorded or reported to the bank either.[1]

¶ 3. In July 2004, Lincoln State Bank filed an action for foreclosure on the mortgage because it had not received payments totaling over $1500. In the course of pursuing the action, Lincoln State Bank learned that the property had been transferred to Roomates and then to Mertz. In February 2005, the circuit court entered a judgment of foreclosure and

---

[1] It also appears from the November 11 hearing transcript that there is a house on the property, which Mertz occupies.

ordered a sheriff's sale of the property. The sale occurred on September 26, 2005, and Osterberg was the winning bidder at $121,000. A hearing to confirm the sale was scheduled for October 17.

¶ 4. However, on October 7, Roomates obtained a loan which it used to pay off Lincoln State Bank. The provider of the loan requested a satisfaction of the mortgage from Lincoln State Bank, but did not receive one. Lincoln State Bank's counsel, apparently unaware that the judgment had been paid, appeared by affidavit at the confirmation hearing on October 17 and did not inform the circuit court of the payment. Roomates, having paid the mortgage, did not attend the hearing. Osterberg did appear, and the court confirmed the sale, finding that $121,000 was a fair value, though the property was assessed at $165,000 with $6000 in back taxes owed.

¶ 5. Counsel for Lincoln State Bank learned of Roomates' payment on October 27, and on November 1, the bank moved the court to determine whether Roomates or Osterberg had the right to the property.

¶ 6. The circuit court held a hearing on November 11, 2005, at which it determined that Roomates had properly redeemed the mortgage and was therefore the rightful owner of the property. Accordingly, the court voided the sale and discharged the mortgage, and ordered Osterberg's payment returned to him. In recognition of Osterberg's "clean hands" in the matter, the court additionally ordered Lincoln State Bank to pay his financing costs and property insurance and part of his attorney fees related to the voided purchase. Osterberg appeals the circuit court's decision to void the sale. Lincoln State Bank does not appeal its court-ordered obligations to Osterberg.

33

¶ 7. This case requires us to interpret a statute and apply it to undisputed facts. As such, it presents a question of law, which we review independently and without deference to the circuit court. *Hobl v. Lord*, 162 Wis. 2d 226, 233, 470 N.W.2d 265 (1991).

¶ 8. On appeal, Osterberg renews his claim that because Roomates failed to notify the court of its payment, the mortgage was not properly redeemed. His argument focuses on WIS. STAT. § 846.13 (2003–04),[2] which reads:

> **Redemption from and satisfaction of judgment.**
> The mortgagor, the mortgagor's heirs, personal representatives or assigns may redeem the mortgaged premises at any time before the sale by paying to the clerk of the court in which the judgment was rendered, or to the plaintiff, or any assignee thereof, the amount of such judgment, interest thereon and costs, and any costs subsequent to such judgment, and any taxes paid by the plaintiff subsequent to the judgment upon the mortgaged premises, with interest thereon from the date of payment, at the same rate. *On payment to such clerk or on filing the receipt of the plaintiff or the plaintiff's assigns for such payment in the office of said clerk the clerk shall thereupon discharge such judgment,* and a certificate of such discharge, duly recorded in the office of the register of deeds, shall discharge such mortgage of record to the extent of the sum so paid.

(Emphasis added.)
Osterberg particularly relies on the statute's second sentence, which provides for dismissal of the foreclosure judgment "[o]n payment to such clerk or on filing

---

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

the receipt of the plaintiff . . . for such payment." Osterberg claims that the statute establishes that a mortgagor must do two things in order to validly redeem a mortgage: (1) pay the judgment, interest and costs; and (2) notify the court that payment has been made.[3] If the mortgagor makes the payment to the clerk of court, as the statute allows, both of these steps are accomplished at once. If, however, the mortgagor follows the statute's other procedure and instead pays the plaintiff, the mortgagor must also notify the court by filing a receipt of the payment with the clerk of court. Since Roomates paid the plaintiff, Lincoln State Bank, and did not file a receipt for the payment with the clerk of court, Osterberg contends that Roomates failed to redeem the property in accordance with the statute. Osterberg further argues that the circuit court lacked the equitable power to sustain the redemption where the statutory procedure was not followed.

¶ 9. Not surprisingly, Roomates offers a different interpretation of the statute. In Roomates' view, the first sentence lays out the entire procedure a mortgagor must follow to redeem: the mortgagor must simply pay, either to the clerk of court or to the plaintiff, the

---

[3] Technically, the Carrillos were the mortgagors in this case, not Roomates. The redemption statute, however, allows a mortgagor's "assigns," as well as a mortgagor, to redeem a mortgage. WIS. STAT. § 846.13. Lincoln State Bank argued to the circuit court that this refers only to parties to whom the mortgage is assigned and that since the Carrillos violated the mortgage by transferring the property, and the mortgage itself was not passed on to Roomates, Roomates could not redeem under any circumstances. The circuit court decided that "assigns" encompasses subsequent owners of the property, and Osterberg has not challenged that holding here. We will refer to the "mortgagor" throughout this opinion for simplicity.

judgment amount, interest and costs. Upon payment, the mortgage is redeemed. The second sentence merely describes an optional procedure by which the mortgagor may obtain a satisfaction of the judgment and have the mortgage purged from the record of deeds. Any duties created by the second sentence, Roomates argues, are on the clerk of court and the register of deeds, not on the mortgagor. Kathleen Mertz offers a similar reading, calling the filing of a payoff receipt "an ancillary procedural matter by which the [redemption] is made a matter of public record."

¶ 10. Osterberg responds that the statutes create a procedure meant to ensure the finality of the confirmation of sale under Wis. Stat. § 846.17. He argues that, pursuant to this statutory scheme, the court must receive notice when a mortgagor pays during the redemption period; otherwise, the confirmation of sale would not be final, to the detriment of foreclosure purchasers, creditors, and debtors alike.[4]

---

[4] Osterberg also relies on the language in Wis. Stat. § 846.17 which states that the deed created after the sheriff's sale "upon confirmation of such sale, shall vest in the purchaser, the purchaser's assigns or personal representatives, all the right, title and interest of the mortgagor . . . and shall be a bar to all claim, right of equity of redemption therein, of and against the parties to such action . . . ." He is correct that in the usual case, confirmation of the sale definitively transfers the property to the purchaser. However, that is clearly not the case where, as here, the confirmation is made by error. *See, e.g., Security State Bank v. Sechen*, 2005 WI App 253, ¶¶ 4, 11, 288 Wis. 2d 168, 707 N.W.2d 576, *review denied*, 2006 WI 23, 289 Wis. 2d 12, 712 N.W.2d 37 (voiding a confirmed sale where the circuit court had erroneously disregarded redemption between sale and confirmation); *see also Family Sav. & Loan Ass'n v. Barkwood Landscaping Co.*, 93 Wis. 2d 190, 202, 286 N.W.2d 581 (1980) (stating that a court may set aside a sale even after confirmation so long as no injustice shall be done to any of the parties).

██

¶ 11. We agree that *someone* must certainly notify the court when a redeeming payment is made, in order to prevent more situations like the unfortunate one before us. We are not convinced, however, that Wɪs. Sᴛᴀᴛ. § 846.13 requires that this person be the mortgagor. In this case, Lincoln State Bank obviously should have notified the court of the redemption and presumably would have done so had it not failed to communicate with its attorney. It would have been prudent for Roomates to attend the hearing, but it had no reason to believe that Lincoln State Bank would proceed with the sale of a property that it no longer had any right to sell. We agree with Roomates that the second sentence does not state a prerequisite for redemption, but rather establishes the procedure for purging the judgment and the mortgage.

¶ 12. Our reading is based upon the fact that the first sentence of the statute states plainly that the mortgagor "may redeem the mortgaged premises at any time before the sale[5] by paying to the clerk of the court in which the judgment was rendered, or to the plaintiff, or any assignee thereof, the amount of such judgment, interest thereon and costs." Wɪs. Sᴛᴀᴛ. § 846.13. By the plain language of this sentence, redemption occurs upon payment. The second sentence, upon which Osterberg relies, does not mention redemption. It also does not give any suggestion that the receipt must be filed within any particular time limit. It certainly does not state plainly that filing the receipt is a necessary prerequisite for redemption to occur, or that redemp-

---

[5] Though the statute's language would seem to require payment before the sale, it is well established, and uncontested here, that payment is valid any time before the confirmation of the sale. *Sechen,* 288 Wis. 2d 168, ¶¶ 8–9.

tion is void if a receipt is not filed. Osterberg finds these requirements in the statute by implication, but we do not find this reading convincing.

¶ 13. *GMAC Mortgage Corp. of Pennsylvania v. Gisvold*, 215 Wis. 2d 459, 572 N.W.2d 466 (1998), relied upon by Osterberg, is not contrary to our holding. In that case, the purchasers were not given notice that the mortgagor's redemption period had ended, and therefore failed to pay the balance of their purchase price within the ten-day period specified in WIS. STAT. § 846.17. *Gisvold*, 215 Wis. 2d at 467–68. The supreme court held that the confirmation of sale was not effective until the purchasers were notified of it, and their purchase of the property was therefore valid, since they had paid within ten days of receiving such notice. *Id.* at 481. The court stated that "the legislature contemplated notice to purchasers of actions that may affect their rights and obligations with respect to confirmation of a foreclosure sale." *Id.* at 482.

¶ 14. The reasoning of *Gisvold* does not compel the result Osterberg seeks. The *Gisvold* purchasers, because of a failure of notice that was no fault of their own, stood to lose both their deposit money and their right to purchase the foreclosed property. *Id.* at 469. The court rightly decided that this could not be the way that the legislature had intended the foreclosure procedure to work. Here, on the other hand, Osterberg has not lost any substantive right *as a result of* the lack of notice. Osterberg lost the right to purchase the property when Roomates made its payment; Osterberg's lack of notice only put off for a few days his realization of this fact and caused him to attend a hearing he otherwise would not have. Especially given the circuit court's award of attorney fees and other costs to Osterberg, this case is quite clearly different from *Gisvold*. If

anything, *Gisvold* would seem to cut the other way, since here it was Roomates and Mertz that faced significant losses because of the failure of Lincoln State Bank to communicate with its attorney.

■

¶ 15. We also believe that our decision upholds the public policy of this state. Redemption allows creditors to be paid in full and landowners to remain in possession of their lands, certainly an outcome to be favored in a foreclosure proceeding. The desirability of this outcome is what first led courts to create the remedy of redemption, *Byron v. May*, 2 Chand. 103, 2 Pin. 443, 447 (Wis. 1850); it was subsequently declared "favored in the law." *Briggs v. Seymour*, 17 Wis. 263, [*255], 272, [*263] (1863). Its incorporation into the statutes serves the same ends; the redemption statute is remedial and is to be construed in favor of the debtor. *Gisvold*, 215 Wis. 2d at 475.

¶ 16. Of course, foreclosure and sale provide a benefit to creditors and debtors as well, as Osterberg points out. In order for the system to work, purchasers must have confidence in the process; otherwise, they would have little incentive to bid. *See M & I Marshall & Ilsley Bank v. Kazim Inv., Inc.*, 2004 WI App 13, ¶ 11 n.4, 269 Wis. 2d 479, 678 N.W.2d 322. However, we do not think that imposing the rule Osterberg requests would do much to shore up bidder confidence. After all, as far as we can tell, the case before us is the first one of its kind. The confusion here arose primarily out of a miscommunication between the property's seller and its counsel, which should not have occurred here and, we hope, will not occur in the future.[6] Further, a purchaser at a

[6] We also do not find much to fear in Osterberg's claim that our reading of the statute will create an incentive for mortgag-

sheriff's sale must *always* account for the possibility that he or she might not end up with the property, since the sale must be confirmed by the court and it is settled law that redemption may occur at any time before confirmation. *Security State Bank v. Sechen*, 2005 WI App 253, ¶¶ 8–9, 288 Wis. 2d 168, 707 N.W.2d 576, *review denied*, 2006 WI 23, 289 Wis. 2d 12, 712 N.W.2d 37. We do not believe that our reading of the statute significantly increases the risk to which foreclosure purchasers already subject themselves, and we therefore uphold the circuit court.

¶ 17. Since we have held that Roomates complied with the statutory requirements and successfully redeemed the property, we need not address Osterberg's argument that the circuit court lacked the equitable authority to waive those statutory requirements. We do note, however, that the "injustice" Osterberg claims was

---

ors to secretly redeem properties. Osterberg points out that a purchaser must make a deposit after the sheriff's sale, and that if the purchaser fails to pay the entire purchase price within ten days of confirmation, that deposit is forfeited. WIS. STAT. § 846.17. Osterberg predicts that a mortgagor might secretly make a redemption payment in the hope·that the purchaser would fail to make full payment, thereby securing a windfall. We find this implausible, but we trust that, should such a case arise, the circuit court would use its discretion so as to avoid doing an injustice to the purchaser.

Osterberg also claims that the redemption here constituted an out-of-court agreement related to the proceedings that was not in writing, which under WIS. STAT. § 807.05 is not binding. This statute, which addresses the binding effect of stipulations on the parties to an action, simply has nothing to do with the case before us. The payment of the redemption amount is a fact that the circuit court considered in reaching its legal conclusion, not an agreement by which the mortgagor attempted to "bind" the court.

done to him strikes us as negligible compared to that which would be done to others were we to find in Osterberg's favor. In particular, Mertz faced the possibility of losing her home, in which she had $40,000 of equity. On the other hand, the circuit court gave Osterberg his money back and additionally awarded him attorney fees and financing costs. It appears to us that Osterberg is out only the time that he took to prepare his bid and attend the sale and related proceedings. Of course, he also lost the chance to purchase Mertz's house out from under her for far less than its assessed value; we do not think that this is the sort of "injustice" the court's equitable power is meant to remedy.

*By the Court.*—Order affirmed.