JP Morgan Chase Bank, NA,
Plaintiff-Appellant,†

v.

Linda G. Green, Community Action, Inc. of
Rock and Walworth Counties and Bank One, NA,
n/k/a JP Morgan Chase Bank, NA, Defendants,

Hare Investments, LLC,
Intervenor-Respondent.

JP Morgan Chase Bank, NA,
Plaintiff-Appellant,

v.

Linda G. Green and David M. Lyon,
Defendants,

Hare Investments, LLC,
Intervenor-Respondent.

Court of Appeals

No. 2007AP1753. *Submitted on briefs January 14, 2008.*
*—Decided April 3, 2008.*

2008 WI App 78

(Also reported in 753 N.W.2d 536.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Shawn R. Hillmann* of *Bass & Moglowsky, S.C.*, Milwaukee.

On behalf of the intervenor-respondent, the cause was submitted on the brief of *Harry C. O'Leary* of *O'Leary Law Office*, Janesville.

Before Vergeront, Lundsten and Bridge, JJ.

¶ 1. VERGERONT, J. This appeal arises from two separate actions to foreclose mortgages on the same property: the first initiated by the first mortgagee and the second initiated by the second mortgagee, JP Morgan Chase Bank, who had been joined in the first action but had not participated. JP Morgan appeals the circuit court order that confirmed a sheriff's sale in the first action to Hare Investments, LLC, and vacated an order confirming a sheriff's sale in the second action.

¶ 2. We conclude: (1) Hare Investments was entitled to apply for confirmation of the sale in the first action even though the first mortgagee's request for confirmation was withdrawn; (2) the circuit court properly exercised its discretion in concluding that the price Hare Investments paid met the applicable standards; and (3) after being served and failing to respond in the first action, JP Morgan was not entitled to obtain an order for a second sale and confirmation of that sale by filing a second action. Accordingly, we affirm the circuit court.

## BACKGROUND

¶ 3. Marshall and Isley Bank (M&I) held a first mortgage on the property, located in Rock County, in the amount of $67,000. JP Morgan Chase Bank[1] held a second mortgage for $44,000. M&I filed the first action in November 2005 in Rock County Circuit Court seeking to foreclose its mortgage because of the mortgagor's default; it waived a judgment for any deficiency remaining after the sale. M&I named JP Morgan as a defendant because of its junior lien. Although the record shows that JP Morgan was served, it did not file an appearance or otherwise respond or appear. M&I moved for a default judgment on the ground that none of the defendants had answered and the mortgagor had abandoned the property. On January 24, 2006, the court entered a judgment of foreclosure and determined that M&I was owed $66,359; it also ordered a sheriff's sale under Wis. Stat. § 846.10(2) (2005–06)[2] at any time

---

[1] JP Morgan is the successor by merger to Bank One, which was named as the lender on the mortgage document.

[2] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

after two months from the date of entry of judgment, unless sooner redeemed.

¶ 4. M&I set a sheriff's sale for March 29, 2006, at which Hare Investments was the high bidder, with a bid of $68,680.

¶ 5. Meanwhile, on January 19, 2006, JP Morgan filed an action in Rock County Circuit Court seeking foreclosure of its second mortgage and sale of the same property, waiving a deficiency judgment. This action was assigned to the same judge who presided in the first action. This complaint did not mention M&I's action and did not name M&I as a party; however, the complaint did assert that JP Morgan's mortgage was subject to a prior mortgage held by M&I. Unaware that this action concerned the same property as that in the M&I action, the court on March 13, 2006, entered a judgment of foreclosure. The judgment determined that JP Morgan was due $48,760.58 from the mortgagor. The court also ordered a sheriff's sale at any time after three months from the date of judgment unless sooner redeemed.

¶ 6. According to the affidavit of JP Morgan's attorney, counsel first learned of the March 29, 2006 sale in M&I's action "on or about March 30, 2006." On March 30, JP Morgan offered to pay M&I the balance due on its mortgage and M&I accepted and assigned to JP Morgan all rights to its judgment of foreclosure.

¶ 7. Apparently before M&I had been contacted by JP Morgan, M&I sent to the court in the first action a notice of application to confirm the March 29 sale.[3] This notice was filed by the clerk of court on April 3,

---

[3] The notice was signed by M&I's attorney on March 30, 2005, the date on which JP Morgan first offered to pay M&I the mortgage balance.

2006, and a hearing was scheduled for April 18. According to an affidavit of mailing, a copy of the notice was sent to Hare Investments. A few days before the scheduled confirmation hearing, JP Morgan sent a letter to the clerk of court, which showed a copy to Hare Investments, advising the court that JP Morgan had purchased an assignment of judgment from M&I, that a document would soon be filed with the court, and that as M&I's assignee it was withdrawing M&I's motion to confirm the sale.

¶ 8. The sheriff's sale in the second action, held on June 14, 2006, produced a higher successful bid—$99,001. JP Morgan moved to confirm this sale. At the scheduled hearing, JP Morgan appeared by their pleadings and the only appearances in person were the principals of Hare Investments, who objected to the confirmation. Now, realizing that the same property was involved in both actions, the court stated that it was going to consolidate the actions and was not going to confirm the second sale at that time. However, the court inadvertently signed the order confirming the second sale, which had been forwarded to it prior to the hearing.

¶ 9. The motions ultimately before the circuit court in the consolidated actions that are the subject of this appeal are: (1) JP Morgan's motion to set aside the first sale; and (2) Hare Investments' motion to intervene, set aside confirmation of the second sale and confirm the first sale or award equitable damages. The court permitted Hare Investments to intervene. The court agreed with Hare Investments that, because JP Morgan defaulted in the first action, its interest as a junior lienholder was extinguished by the judgment in the first action and it had no right to initiate a foreclosure of its mortgage and a sale in the second action. The

court concluded that JP Morgan's explanation that it did not know about the first sale until after it occurred did not entitle JP Morgan to start its own foreclosure action and to have a second sale because JP Morgan was properly served with the summons and complaint in the first action and there was the requisite public notice of the first sale. The court rejected JP Morgan's argument that it should not confirm the first sale because the amount received was grossly inadequate. The court rejected JP Morgan's alternative argument that the price was inadequate and there was a mistake in the process. The court concluded that JP Morgan had established no other equitable basis for not confirming the first sale. Accordingly, the court vacated the order confirming the second sale, which it had inadvertently signed, and entered an order confirming the first sale and voiding transfer of title to the purchaser at the second sale.

## DISCUSSION

¶ 10. On appeal, JP Morgan contends the circuit court erred in confirming the first sale and in vacating confirmation of the second sale for the following reasons: (1) Hare Investments did not have the right to apply for confirmation of the first sale after JP Morgan, as M&I's assignee, withdrew the application for confirmation; (2) the court erroneously exercised its discretion in determining that Hare Investments paid fair value for the property; and (3) JP Morgan had the right to bring a second foreclosure action as junior lienholder and conduct a sale pursuant to that judgment, and the equities favor confirmation of the second sale.

¶ 11. Generally, mortgage foreclosure proceedings are equitable in nature. *Security State Bank v. Sechen,*

2005 WI App 253, ¶ 5, 288 Wis. 2d 168, 707 N.W.2d 576. However, to the extent resolution of the issues on this appeal require the construction of statutes as applied to undisputed facts, they present questions of law, which we review de novo. *Lincoln State Bank v. Carrillo*, 2006 WI App 237, ¶ 7, 297 Wis. 2d 30, 725 N.W.2d 634. The decision whether to confirm a sale is committed to the circuit court's discretion. *Sechen*, 288 Wis. 2d 168, ¶ 5. We affirm discretionary decisions if the circuit court applies the correct legal standard to the relevant facts and reaches a reasonable outcome. *See Republic Bank of Chicago v. Lichosyt*, 2007 WI App 150, ¶ 31, 303 Wis. 2d 474, 736 N.W.2d 153.

I. Hare Investments' Application for Confirmation of First Sale

 A. Wisconsin Stat. § 846.13—Mortgagor's Right to Redeem

¶ 12. JP Morgan first argues that it had the right to redeem the property under Wis. Stat. § 846.13 any time before confirmation of the first sale, and, once it did so, the court could not proceed with confirmation of that sale. Section 846.13 provides:

**Redemption from and satisfaction of judgment.** The mortgagor, the mortgagor's heirs, personal representatives or assigns may redeem the mortgaged premises at any time before the sale by paying to the clerk of the court in which the judgment was rendered, or to the plaintiff, or any assignee thereof, the amount of such judgment, interest thereon and costs, and any costs subsequent to such judgment, and any taxes paid by the plaintiff subsequent to the judgment upon the mortgaged premises, with interest thereon from the date of payment, at the same rate. On payment to such

clerk or on filing the receipt of the plaintiff or the plaintiff's assigns for such payment in the office of said clerk the clerk shall thereupon discharge such judgment, and a certificate of such discharge, duly recorded in the office of the register of deeds, shall discharge such mortgage of record to the extent of the sum so paid.

JP Morgan points out that case law has construed § 846.13, when read together with WIS. STAT. § 846.17,[4] to "establish a mortgagor's right to redeem foreclosed property any time prior to sale, and 'sale' occurs upon confirmation[;] . . . only upon confirmation does title vest in the purchaser and extinguish the mortgagor's right of redemption." *See Sechen*, 288 Wis. 2d 168, ¶ 8. JP Morgan asserts the circuit court erred in concluding it could not "redeem" after the first sale but before confirmation.

---

[4] WISCONSIN STAT. § 846.17 provides:

> **Deed, execution and effect of.** Upon any such sale being made the sheriff or referee making the same, on compliance with its terms, shall make and execute to the purchaser, the purchaser's assigns or personal representatives, a deed of the premises sold, setting forth each parcel of land sold to the purchaser and the sum paid therefor, which deed, upon confirmation of such sale, shall vest in the purchaser, the purchaser's assigns or personal representatives, all the right, title and interest of the mortgagor, the mortgagor's heirs, personal representatives and assigns in and to the premises sold and shall be a bar to all claim, right of equity of redemption therein, of and against the parties to such action, their heirs and personal representatives, and also against all persons claiming under them subsequent to the filing of the notice of the pendency of the action in which such judgment was rendered; and the purchaser, the purchaser's heirs or assigns shall be let into the possession of the premises so sold on production of such deed or a duly certified copy thereof, and the court may, if necessary, issue a writ of assistance to deliver such possession. . . .

¶ 13. JP Morgan's reliance on Wis. Stat. § 846.13 overlooks the plain language of the statute: it applies to "[t]he mortgagor, the mortgagor's heirs, personal representatives or assigns . . . ." JP Morgan is a junior lienholder, not the mortgagor or the heir, personal representative or assign of the mortgagor.

¶ 14. The cases that JP Morgan cites in support of its right to redeem the property under Wis. Stat. § 846.13 concern entities that fall within one of the statutorily specified categories. None apply to junior lienholders. *See Sechen*, 288 Wis. 2d 168, ¶ 3 (mortgagors); *Gerhardt v. Ellis*, 134 Wis. 191, 192, 114 N.W. 495 (1908) (heir of mortgagor); *Carrillo*, 297 Wis. 2d 30, ¶ 8 n.3 (assign of mortgagor);[5] *see also Hobl v. Lord*, 157 Wis. 2d 13, 15, 458 N.W.2d 536 (Ct. App. 1990) (mortgagor). These cases do not support JP Morgan's position that, as the junior lienholder, it had the right to redeem the mortgaged premises under § 846.13.[6]

_____

[5] JP Morgan describes the party in *Lincoln State Bank v. Carrillo*, 2006 WI App 237, 297 Wis. 2d 30, 725 N.W.2d 634, who redeemed the property under Wis. Stat. § 846.13 as "the holder of a junior lien on the property . . . . The property was not redeemed by the mortgagor, but by a junior lien holder." We do not understand how JP Morgan can read *Carrillo* in this way. The redeeming party, Roommates, had purchased the property from the mortgagors in violation of the terms of the mortgage and so, according to the bank, could not acquire the mortgage. *Id.*, ¶ 8 n.3. However, the circuit court determined that "assigns" in § 846.13 included subsequent owners, and we accepted the ruling because it was not challenged on appeal. (Although Roommates was an assign, not a mortgagor, we explained that "for simplicity," we were referring to it as "mortgagor.") *Id.* There is no question that Roomates was *not* a junior lienholder.

[6] In a brief paragraph, JP Morgan asserts that the "mortgagors assigned JP Morgan the right, in the mortgage, to take action on behalf of the mortgagors to protect JP Morgan's

■

¶ 15. We conclude that Wis. Stat. § 846.13 does not apply to JP Morgan, a junior lienholder.[7]

B. Wisconsin Stat. § 846.15—Subrogation of Junior Lienholder

¶ 16. Wisconsin Stat. § 846.15 specifically addresses junior lienholders:

interests." The provision in the mortgage agreement that JP Morgan apparently refers to provides that "If any action or proceeding is commenced that would materially affect lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect lender's interests." JP Morgan did not make this argument in the circuit court and does not explain in its appellate brief how this provision makes it either a mortgagor or an assign under Wis. Stat. § 846.13, which has a purpose of allowing creditors to be paid in full and landowners to remain in possession of their lands. *See Carrillo*, 297 Wis. 2d 30, ¶ 15. Because this argument is raised for the first time on appeal and is not adequately developed, we do not address it.

[7] In the circuit court JP Morgan referred to "its right to redeem," and did not specifically refer to a statute. Apparently Hare Investments understood JP Morgan meant Wis. Stat. § 846.13, and the court may have as well. We are uncertain whether, when the court ruled that JP Morgan did not have the right to redeem after the sale, it was reading § 846.13 to apply to JP Morgan but to permit redemption only before the sale. This is how JP Morgan reads the court's ruling on this point and it is a reasonable reading of the transcript. JP Morgan argues on appeal that the circuit court erred in construing "sale" in § 46.13 to mean the actual sale and not "confirmation of sale." Because we conclude that JP Morgan, as a junior lienholder, does not have the right to redeem the mortgaged premises under § 846.13, any error the court made in construing the timing element in § 846.13 does not affect JP Morgan's rights. *See* Wis. Stat. § 805.18(2).

**Plaintiff's rights acquired by junior lienor**. Any person having a junior lien upon the mortgaged premises or any part thereof or interest therein, may, at any time before such sale, pay to the clerk of court, or the plaintiff or the plaintiff's assignee, the amount of such judgment, taxes, interest and costs, and costs subsequent to judgment, and shall thereupon be subrogated to all the rights of the plaintiff as to such judgment.

¶ 17. JP Morgan did not expressly refer to Wis. Stat. § 846.15 in the circuit court. It is possible JP Morgan viewed § 846.15 as the source of the "right to redeem" it referred to in the circuit court. *See* footnote 7. It may be that in practice the "right to redeem" is used loosely to include both a mortgagor's right to redeem the mortgaged premises under Wis. Stat. § 846.13 and a junior lienholder's right under § 846.15 to pay the judgment and become subrogated to the plaintiff's rights in the judgment. However, only § 846.13, not § 846.15, uses the terms "redeem" and "redemption," and the effect of the two statutes is not the same. When a mortgagor (or heirs, personal representatives, or assigns) pays the plaintiff the amount of the judgment and other items in § 846.13, the judgment is discharged; the effect is that the mortgagor avoids the transfer of title to another and retains title. When a junior lienholder pays the plaintiff the amount of the judgment and other items specified in § 846.15, the junior lienholder neither retains title (since it never had it) nor acquires title; rather, the junior lienholder acquires the rights the plaintiff has as a result of the judgment—to have a sale of the property, to recover from the proceeds the amount determined due the plaintiff in the judgment, and, if the judgment so provides, to recover a deficiency judgment from the mortgagor if the sale proceeds are insufficient.

729

¶ 18. On appeal JP Morgan appears to argue that Wıs. Stat. § 846.15 gives it the right, upon payment to M&I, to vacate M&I's request for confirmation of the sale and conduct its own sale by initiating its own foreclosure action. It cites this description of § 846.15 in *Carefree Homes, Inc. v. Production Credit Ass'n.*, 81 Wis. 2d 541, 549, 260 N.W.2d 759 (1978):

> In proceedings to foreclose a senior mortgage lien . . . a junior lienholder is afforded an opportunity to obtain an assignment of the senior creditor's rights by satisfying the outstanding senior debt. The junior lien-holder may then direct the prosecution of the action in a manner calculated to satisfy both the senior and junior debts, either by withholding action in the hope that the value of the real estate will increase, or by having a receiver appointed to collect rents and apply-ing them to the senior debt.

(Citations omitted.)

¶ 19. In *Carefree Homes* there was no mortgage foreclosure action or sale. *See generally,* 81 Wis. 2d 541. The court's brief reference to Wıs. Stat. § 846.15 was for the purpose of rejecting the landowner's argument that it was fair to extinguish the judgment creditor's lien because a foreclosure sale, had it taken place, would have had the same effect. *Id.* at 548–49. *Carefree Homes* does not shed any light on whether the junior lienholder's right to "direct the prosecution of the action in a manner calculated to satisfy both the senior and junior debts" includes withdrawing the senior lienholder's application for confirmation of a sale and initiating another foreclo-sure action to obtain another sale. *See id.* at 549. Neither of the examples given by the court in *Carefree Homes*— "withholding action in the hope the value of the real estate will increase" or "having a receiver appointed to

collect rents and applying them to the senior debt"—suggests that there had already been a sale. *See id.*

¶ 20. It may be that JP Morgan assumes that, because a mortgagor[8] may redeem the mortgaged property until confirmation of sale under Wis. Stat. § 846.13, when Wis. Stat. § 846.15 uses the phrase "at any time before such sale," it means anytime before confirmation of the sale. However, JP Morgan does not develop this argument and the merits are far from clear.[9] We will nonetheless assume without deciding that, under § 846.15, JP Morgan could become subrogated to M&I's rights as to the judgment any time

---

[8] From hereon we use "mortgagor" to include all the persons specified in Wis. Stat. § 846.13.

[9] The rationale for concluding that a mortgagor may redeem the mortgaged premises until the confirmation of sale focuses on the mortgagor's right to redeem. The court in *Gerhardt v. Ellis*, 134 Wis. 191, 195, 114 N.W. 495 (1908), explained that "the right to redeem persists at least until confirmation of sale, unless the right is cut off by statute." The court stated that the similarly worded predecessor to Wis. Stat. § 846.13 "does not limit redemption, but merely provides for redemption and the manner of payment at any time before sale." *Id.* The court construed the almost identically worded predecessor to Wis. Stat. § 846.17 to "limit[] the time of redemption" because of the statement that confirmation vested title in the purchaser and barred "all claim, right or eligibility of redemption . . . ." *Id.* We cited to *Gerhardt* in *Security Bank v. Sechen*, 2005 WI App 253, ¶ 9, 288 Wis. 2d 168, 707 N.W.2d 576.

Because a mortgagor's right to redeem is not the same as the junior lienholder's right to be subrogated to the plaintiff's rights in the judgment under Wis. Stat. § 846.15, it is not obvious to us that the rationale in *Gerhardt* and *Sechen* applies. A developed argument on whether a junior lienholder could exercise its right to be subrogated to the plaintiff's interest in the judgment under § 846.15 after a sale but before confirmation would need to discuss, at a minimum, the interest the

731

before confirmation of the sale. The inquiry that remains is whether those rights include the right to withdraw M&I's application for confirmation of the sale and preclude Hare Investments from applying for confirmation of the sale.[10]

C. WISCONSIN STAT. §§ 846.165 and 846.18— Application for Certification

¶ 21. JP Morgan argues that a purchaser has no statutory authority to apply for confirmation of a sale and that under WIS. STAT. § 846.15, JP Morgan acquired M&I's statutory right to apply for confirmation, which includes withdrawing M&I's application for confirmation. It follows, according to JP Morgan, that the court erred in considering Hare Investments' application for confirmation.

¶ 22. JP Morgan's argument that a purchaser may not move for confirmation of a sale is based on its construction of WIS. STAT. §§ 846.165 and 846.18. Section 846.165 addresses the process for application for confirmation and provides:

**Application for confirmation of sale and for deficiency judgment. (1)** No sale on a judgment of

---

junior lienholder acquires under § 846.15 and whether WIS. STAT. § 846.17 establishes confirmation as the time limit on acquiring that interest.

[10] WISCONSIN STAT. § 846.02 permits "any defendant" to pay to the plaintiff the principal amount owing on the mortgage plus interest and costs and to demand assignment of the mortgage; if this occurs after judgment, the judgment is assigned. This is the statute JP Morgan cited in the assignment of judgment it filed in the first action. JP Morgan does not argue that § 846.02 gave it any rights in addition to the rights it acquired by subrogation under WIS. STAT. § 846.15.

mortgage foreclosure shall be confirmed unless 5 days' notice has been given to all parties that have appeared in the action. Such notice shall be given either personally or by registered mail directed to the last-known post-office address, mailed at least 5 days prior to the date when the motion for confirmation is to be heard, if any post-office address is known; if not known, mailing may be dispensed with but an affidavit shall be filed with the court stating that the address is not known, and the notice shall state, in addition to other matter required by law, the amount of the judgment, the amount realized upon the sale, the amount for which personal judgment will be sought against the several parties naming them, and the time and place of hearing.

WISCONSIN STAT. § 846.18 provides:

**Tardy confirmation of sale.** In all cases where a mortgage foreclosure sale has been made but not confirmed and the purchaser or the purchaser's successor or assign has taken possession of the land by virtue of said sale, and occupied it for 6 years from and after said sale, the purchaser may apply for and the court may enter an order confirming said foreclosure sale with the same force and effect as if said confirmation was made as otherwise provided by law.

¶ 23. JP Morgan argues that WIS. STAT. § 846.18 describes the only situation in which a purchaser may apply for confirmation of a sale, namely, after six years of occupancy. According to JP Morgan, if WIS. STAT. § 846.165 permitted purchasers to apply for confirmation, § 846.18 would be superfluous. In addition, JP Morgan asserts, "there is no other party who can attest to" the information that must be in the notice required by § 846.165 and "realistically, the plaintiff is the party responsible for prosecution of the foreclosure."

733

¶ 24. When we construe a statute, we begin with the language of the statute. We interpret the language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes[.]" *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. If we conclude the statutory language is plain, then we apply its plain meaning. *Id.*, ¶ 45. If we conclude it is ambiguous—that is, capable of being understood by reasonably well-informed persons in two or more senses—then we must resolve the ambiguity. *See id.*, ¶¶ 47–48.

¶ 25. We begin by observing that WIS. STAT. § 846.165 does not specify who may or may not apply for confirmation of the sale. We do not agree with JP Morgan that the information required in the notice shows that the statute "clearly assumes" the plaintiff is the person applying for confirmation. The required information—the amount of the judgment, the amount realized upon the sale, the amount of the personal deficiency, if any, that is sought and against whom—is contained in the judgment of foreclosure and the report on the sale that must be filed under WIS. STAT. § 846.16. It is true that in the usual course of events the plaintiff mortgagee applies for confirmation of the sale. But we see nothing in § 846.165 that precludes a purchaser from doing so where, as here, the application filed by the mortgagee is withdrawn. We conclude § 846.165 is silent on this point and therefore ambiguous.

¶ 26. Turning to WIS. STAT. § 846.18, we do not agree with JP Morgan that this section plainly establishes that the purchaser may apply for confirmation only after six years of occupancy. A reasonable reading

of § 846.18 is that it provides a remedy for purchasers or their successors or assigns when, for whatever reason, the sale is not confirmed according to the procedures in WIS. STAT. § 846.165, but their occupancy for a sufficient period entitles them to confirmation by this alternative route. At best, JP Morgan offers a reasonable alternative reading of § 846.18 as the exclusive means by which a purchaser may seek confirmation. Thus, at best, § 846.18 is ambiguous as to its relationship to § 846.165 and does not resolve the question whether a purchaser may apply for certification under § 846.165.

■■■■■

¶ 27. To resolve this question, we examine the relation of the purchaser to the confirmation proceedings. As Hare Investments points out, case law has established that purchasers have an interest in the proceedings to confirm the sale.

> Although the purchaser is not necessarily a party appearing in the foreclosure action for purposes of the judgment and sale, "[t]he purchaser at the sale is a party interested in the proceedings to confirm the sale." The purchaser is a "quasi-party in the action confirming the foreclosure sale and may appeal court orders affecting his or her rights with respect to the confirmation." Accordingly, the purchaser is entitled to notice of the confirmation hearing. The effect of providing notice to the purchaser is, in part, to inform the purchaser of the confirmation and thereby inform the purchaser of the expiration of the mortgagor's redemption rights and the dates encompassed in the purchaser's ten-day payment period.

*GMAC Mortgage Corp. v. Gisvold*, 215 Wis. 2d 459, 482–83, 572 N.W.2d 466 (1998) (citations omitted).[11]

---

[11] In *GMAC Mortgage Corp. v. Gisvold*, 215 Wis. 2d 459, 483, 572 N.W.2d 466 (1998), the purchasers received notice of

██

¶ 28. While case law has not defined the precise nature of the purchaser's interest in the confirmation of a sale, we conclude, at a minimum, the purchaser has an interest in *having* a confirmation hearing. Without that hearing, the purchaser has no opportunity for the court to decide whether the purchaser is entitled to transfer of the property according to applicable law.

██

¶ 29. JP Morgan argues that a purchaser has no right "to end up with the property," citing to *Carrillo*, 297 Wis. 2d 30, ¶ 16. We disagree. In *Carrillo* we affirmed an order vacating a confirmation sale because the mortgagor had, unbeknownst to the mortgagee, paid the amount due under Wis. Stat. § 846.13 before confirmation. *Id.*, ¶ 1. After construing that statute in a manner favorable to the mortgagor's right of redemption, we pointed out, in response to the purchaser's objections, that "a purchaser at a sheriff's sale must *always* account for the possibility that he or she might not end up with the property, since the sale must be

the first hearing to confirm the sale and therefore knew of the stipulation between the plaintiff and the mortgagor staying the confirmation. However, they were not notified of a subsequent stipulation between those parties to continue to stay the confirmation or the mortgagor's filing a of an amended order. *Id.* at 483–84. These events "affect[ed the purchasers'] rights to purchase the property" by delaying their right to purchase. *Id.* at 484. Thus, the court concluded, they were "entitled to notice of these events insofar as they affected their right to complete the purchase of the property." *Id.* More specifically, the court ruled, Wis. Stat. § 846.165 contemplates notice to the purchaser at a foreclosure sale of when the sale is confirmed, when the mortgagor's redemption period ends, and when the purchaser's ten-day period for payment of the purchase price balance expires. *Id.* at 464.

confirmed by the court and it is settled law that redemption may occur at anytime before confirmation." *Id.*, ¶ 16 (emphasis in original). This is simply a recognition of the obvious proposition that a purchaser does not have a right to title of the property irrespective of the mortgagor's statutory right to redeem the property, and, for that matter, irrespective of other statutes that govern the process. But it does not follow that a purchaser has no interest in whether a confirmation hearing takes place.

¶ 30. JP Morgan also argues that the rights it acquired by subrogation under WIS. STAT. § 846.15 include the right to decide whether confirmation of the first sale should take place or there should be another sale instead. Allowing the purchaser at the first sale to apply for confirmation, JP Morgan asserts, interferes with this right. We rejected a similar argument in *M&I Marshall & Ilsely Bank v. Kazim Inv., Inc.*, 2004 WI App 13, ¶¶ 3–5, 269 Wis. 2d 479, 678 N.W.2d 322. There the circuit court order set aside the sale to a third party and allowed a "Plan of Redemption" that, we concluded, did not comply with WIS. STAT. § 846.13. *Id.* The lender argued that as a " 'quasi-party' to the action, [the purchaser's] rights should not trump those of the original parties to the action to resolve their dispute" and that the circuit court's decision "equitably protected" the rights of creditor and debtor. *Id.*, ¶ 11 n.4. We endorsed the purchaser's rejoinder and concluded that creditors and debtors in general benefit from persons bidding at sheriffs' sales and the incentive to bid is diminished if "bidders could not do so with confidence that their winning bids would be confirmed [according to applicable law]." *Id.*

¶ 31. In summary, neither the language of WIS. STAT. § 846.165 nor JP Morgan's arguments persuade

us that the statute precludes a purchaser from obtaining a confirmation hearing, where, as here, the mortgagee's application for confirmation has been withdrawn. Instead, we conclude it is more reasonable to permit the purchaser to apply for confirmation in these circumstances. This construction affords the purchaser an opportunity to have the court decide whether it is entitled to transfer of the property under applicable law, and it does not undermine the rights of the lienholders and mortgagor to object to certification as provided by law.

¶ 32. Because we conclude Hare Investments was entitled to apply for confirmation of the sale, the court did not err in allowing it to do so.

II. Determination of "Fair Value" for First Sale

■■■■

¶ 33. WISCONSIN STAT. 846.165(2) provides:

> **(2)** In case the mortgaged premises sell for less than the amount due and to become due on the mortgage debt and costs of sale, there shall be no presumption that such premises sold for their fair value and no sale shall be confirmed and judgment for deficiency rendered, until the court is satisfied that the fair value of the premises sold has been credited on the mortgage debt, interest and costs.

This section requires that the court find "fair value" before confirming a sale. Where, as here, there is no deficiency judgment sought, there is a presumption that the property sold for fair value. *Bank of New York v. Mills*, 2004 WI App 60, ¶ 15, 270 Wis. 2d 790, 678 N.W.2d 332. The supreme court has interpreted the requirement of "fair value" "to mean nothing more than 'such reasonable value as does not shock the conscience

of the court.' " *Id.*, ¶ 11 (citing *First Wis. Nat'l. Bank v. KSW Invs., Inc.*, 71 Wis. 2d 359, 367, 238 N.W.2d 123 (1976)). An alternative phrasing is that the "trial court . . . has discretion to refuse to confirm such a sale . . . where the sale price is . . . so grossly inadequate as to shock the conscience of the court." *Gumz v. Chickering*, 19 Wis. 2d 625, 635, 121 N.W.2d 279 (1963). A sale will not be set aside simply because the price is inadequate, but the court may refuse to confirm a sale if the price is inadequate *and* there is a showing of mistake, misapprehension, or inadvertence on the part of interested parties or prospective purchasers. *Id.* at 634.

¶ 34. JP Morgan contends the circuit court erroneously exercised its discretion in confirming the sale to Hare Investments because its bid—$68,680—was so inadequate as to shock the conscience and, alternatively, that price was inadequate coupled with the "inadvertent failure of JP Morgan to participate in the first sale."

¶ 35. In support of its first argument, JP Morgan points to the evidence that (1) in a May 20, 2006 evaluation of the property a broker stated the "as is" value was $120,000; (2) the assessed value for tax purposes was $92,500, which yielded an equalized fair market value of $104,260; and (3) the purchaser of the property at the second sale subsequently listed the property for $139,000.

¶ 36. In determining whether the price of $68,680 was so grossly inadequate as to shock the conscience of the court, the court considered it significant that at the second sale the price was $99,001. This amount was generally in line with the equalized fair market value. More importantly, it was reasonable for the court to view $99,001, the price actually paid, as more probative than the evaluation of a broker, the equalized fair

market value, and a listing price. The court applied the correct legal standard, and its conclusion that $68,680 was not so grossly inadequate as to shock the court's conscience is a reasonable one.

¶ 37. As for the alternative basis that the price was inadequate—though not grossly so—and there was a mistake, JP Morgan asserts that its failure to participate in the second sale was "inadvertent." Other than that assertion, JP Morgan does not explain how the circuit court erroneously exercised its discretion.

¶ 38. Our review of the record shows that the circuit court specifically asked JP Morgan's counsel why it did not appear at the first sheriff's sale. He stated JP Morgan was not aware of the sheriff's sale and that is why it did not "show up." When the court asked if counsel was claiming that JP Morgan had not been served, he stated:

> When we determined that the sale had occurred in the M&I case, JP Morgan could not identify who was served. . . . Rather than fight about whether the sale was to go forward or not, JP Morgan paid the M&I Bank balance in full and took an assignment of the judgment . . . .

The court found that JP Morgan had been served with the summons and complaint because the record showed service. The court also found that notice of the sale was published pursuant to the statute. The court concluded that the failure of JP Morgan to attend the sale was the result of its own neglect and was not the type of "mistake" that warranted setting aside the first sale.

¶ 39. The circuit court's assessment of JP Morgan's failure to appear at the first sale is supported by the record. The court's conclusion that this does not warrant setting aside the first sale, given that the price is not grossly inadequate, is a reasonable one.

¶ 40. We conclude the circuit court properly exercised its discretion in concluding that price at the first sale met the applicable standards.

III. Second Foreclosure Judgment and Sale

■

¶ 41. In what we understand to be an alternative argument, JP Morgan contends that it had the right to bring a separate action to foreclose its own mortgage and obtain its own order for a sale, even if it was named and served in the first action. According to JP Morgan, the law allows each mortgagee to bring its own action to foreclose its own mortgage, and the court's ruling that it could not do so after it defaulted in the first action is at odds with established law.

¶ 42. The cases JP Morgan cites do not provide authority for its position. The cases holding that a senior mortgagee is not a necessary party to a junior mortgagee's foreclosure action, *see, e.g., Milwaukee Trust Co. v. Van Valkenburgh*, 132 Wis. 638, 649, 112 N.W. 1083 (1907), do not address whether the junior lienholder may properly bring a separate, second action after having been joined in the senior mortgagee's action. The cases regarding the rights of junior lienholders *not* joined as parties in a foreclosure action are also not on point. *See, e.g., First Wis. Trust Co. v. Rosen*, 143 Wis. 2d 468, 472–73, 422 N.W.2d 128 (1988) (junior lienholders not joined retain their interests unaffected by the sale); *see also Wisconsin Fin. Corp. v. Garlock*, 140 Wis. 2d 506, 513, 410 N.W.2d 649 (Ct. App. 1987).[12] JP Morgan *was* named and served in the first action.

---

[12] It is for this reason that, generally, plaintiffs in a foreclosure action *want* to join all junior lienholders who may have an interest, as M&I did in its action.

¶ 43. Hare Investments relies on *Syver v. Hahn*, 6 Wis. 2d 154, 94 N.W.2d 161 (1959), to argue that JP Morgan was precluded from initiating the second action. The circuit court was apparently persuaded by the reasoning of this case. Rather than deciding whether *Syver* is applicable here,[13] we focus on whether JP

[13] In *Syver v. Hahn*, 6 Wis. 2d 154, 156, 94 N.W.2d 161 (1959), the first mortgagee brought a foreclosure action in county court joining the second mortgagee and other holders. That judgment determined the amounts due to both mortgagees and the other lienholders and ordered a sale. *Id.* at 156. No sale had been confirmed when the second mortgagee began an action in the circuit court to foreclose the second mortgage and obtained a judgment and order for a sale. *Id.* at 157. The party who had become subrogated to the rights of the first mortgagee in the first judgment moved to vacate the judgment and order for sale in the second action, and the denial of the motion was the subject of the appeal. *Id.* at 157–58. Meanwhile, the circuit court in the second action confirmed the sale ordered in that action. *Id.* at 158.

The supreme court concluded that the circuit court erred in assuming jurisdiction because the county court, a court of concurrent jurisdiction, had already assumed jurisdiction. *Id.* at 158–59. The supreme court stated that the first judgment had apparently determined the amount and validity of the second mortgage and, "[e]ven if those issues were not determined by the judgment, they were matters which the county court would decide after a sale if and when it appeared that there was a surplus." *Id.* at 159. It also observed that the first judgment ordered that the " 'defendants . . . be forever barred and foreclosed of all right, title, interest and equity of redemption in said mortgaged premises, except the right to redeem the same before sale as provided by law.' " *Id.* The court stated that, since there had been no appeal to this judgment, it was "res adjudicata" and the rights of the second-mortgage holder "are foreclosed and restricted to the right to redeem before sale; and if he is to realize anything on his second mortgage, it will depend upon the existence of a surplus after sale under the county court judgment." *Id.* The second mortgagee argued that cases sup-

Morgan could obtain another sale by filing its own second action. We conclude the answer is no, for reasons similar to those discussed in the preceding sections.

¶ 44. Hare Investments, as the purchaser in the first sale, had the right to a hearing at which the court considered whether to confirm the sale according to applicable law. JP Morgan has presented no law and no

ported the right of a second mortgagee to obtain a foreclosure and sale under that mortgage, subject to the prior liens and encumbrances; but the court concluded those cases were not on point because in "none of them was there an existing judgment foreclosing the second-mortgage holder." *Id.* at 161. The court also commented on the confusion and possible adverse effect on bidding that would arise from allowing a sale in the second action. *Id.* at 161–62.

JP Morgan argues that, because we are not concerned with different courts exercising concurrent jurisdiction, *Syver* is inapplicable. We agree that the *Syver* court's analysis of concurrent jurisdiction is not directly applicable; however, other aspects of the court's analysis appear to have a bearing on this case. We say "appears to" because the fact that JP Morgan defaulted, unlike the second mortgagee in *Syver*, raises questions not answered by *Syver*, such as: what precisely were the issues regarding JP Morgan's mortgage that were determined by the judgment in the first action? What issues were not determined that could have been determined, had JP Morgan responded? In addition, the language in the first judgment in this case is not precisely the same as that in *Syver* and does not make clear at what point in time the defendants are "forever barred and foreclosed of any right, title or interest in and to said premises." (The first judgment provided that the "premises shall be sold free and clear of all claim, right or equity of redemption . . . of all parties to this action . . . and . . . said Defendants be forever barred and foreclosed of any right, title or interest in and to said premises.") Finally, it is not clear what the *Syver* court means by the second-mortgage holder having a "right to redeem before sale." *See* paragraph 17, *supra; Syver*, 6 Wis. 2d at 159.

persuasive policy to support its contention that it should be able to prevent the court's consideration of confirmation of the first sale by filing a second action and obtaining a second judgment ordering a sale. JP Morgan could, and did, challenge the price of the first sale at the confirmation hearing on that sale, and we have concluded the court properly exercised its discretion in rejecting JP Morgan's challenges. We understand from comments counsel made to the circuit court that JP Morgan decided that the first sale was "not a confirmable sale," and that is why it proceeded as it did.[14] However, the high standard for successfully challenging the price at a sheriff's sale is well-established, *see Gumz*, 19 Wis. 2d at 634–35, and this standard is undermined if JP Morgan can have a second sale confirmed without meeting that standard regarding the first sale.

¶ 45. We also observe that JP Morgan had the opportunity to, and did, present to the circuit court its reason for not participating in the second sale, and the court, in the proper exercise of its discretion, concluded that did not warrant setting aside the first sale. Allowing JP Morgan to obtain confirmation of a second sale by filing a second action relieves it of the consequences of its own neglect, which the court found was not excusable.

¶ 46. JP Morgan argues that the interests of the purchaser at the second sale, who took possession of the property after the court mistakenly signed the order confirming the second sale, warrant confirmation of the second sale.[15] However, the order was signed by the court on July 10, 2006, and by the August 4, 2006

---

[14] The court did not make a finding whether JP Morgan knew about M&I's action when it filed its own action.

[15] After the court mistakenly signed the order confirming the second sale and mailed it to J.P. Morgan's counsel, a deed was issued to the purchaser at the second sale.

hearing at the latest, JP Morgan understood that the court did not intend to confirm the second sale without considering Hare Investments' right to confirmation of the first sale. This minimal period of misunderstanding, even if the misunderstanding was not due to any fault or neglect of JP Morgan, does not warrant confirmation of a sale that, we have already concluded, JP Morgan was not entitled to obtain as it did.[16]

## CONCLUSION

¶ 47. In the first action, Hare Investments was entitled to apply for confirmation of the sale and the court properly exercised its discretion in concluding that the price met the applicable standards. After being joined and failing to respond in the first action, JP Morgan was not entitled to obtain an order for a second sale and confirmation of that sale by filing a second action. Accordingly we affirm.

*By the Court.*—Judgment and order affirmed.

---

[16] The court considered JP Morgan's argument about the interests of the purchaser at the second sale, understanding that the court had broad equitable powers in deciding whether to confirm the first sale. It concluded that JP Morgan acted at its peril in not advising the court that its action concerned the same property for which there had already been a sale pursuant to the first judgment, and in not appearing at the confirmation hearing in person or by counsel. If JP Morgan had so appeared, the court stated, JP Morgan would have heard the court say it was not going to confirm the second sale without allowing Hare Investments to be heard.